Lask vs. The United States.

Pinney.
1p 77
76 363

## Lask vs. The United States.

1. ELECTOR — INTENTION. — A person who has resided six months in this Territory, with the *bona fide* intention of becoming a citizen, although he may have a family residing elsewhere and keeping house, is a legal juror and an elector under the statute requiring six months' residence in the Territory with the *bona fide* intention of becoming a citizen. The intention of a person to become a citizen must be ascertained from all his acts in connection with his residence.

2. TITLE TO OFFICE. — The validity of the title of the district attorney to his office cannot be brought in question and determined on a motion to quash an indictment. His right to such office can be determined only by *quo warranto*.

3. GRAND JURY. — If any one of the grand jury, which passed upon an indictment, was not a legal grand juror, the accused has a right to have the indictment quashed.

ERROR to the District Court for *Rock* County.

The case is stated in the opinion of the court.

*H. N. Wells,* for plaintiff in error.

*D. Brigham,* for defendant in error.

MILLER, J. This case came before the court on an agreed statement of facts which had been presented to the district court of Rock county, at a term in October, 1839, in behalf of the defendant, to sustain a motion to quash an indictment pending against him in said court. The facts are as follows:

1. David Burnet, one of the grand jurors who found the bill, had been living in the Territory for more than six months previous to the commencement of this term of the court, but previous to the first day of August last his wife and family were residing and keeping house in the State of Ohio, and on the said first day of August last he moved his family to this county, and has since resided here.

2. That Daniel F. Kimball is now, and was at the time of receiving his appointment as district attorney for the county of Rock, a postmaster, duly commissioned by the postmaster-general of the United States, and acting as such at Janesville, in said county of Rock, and that said Kimball was present, aiding, assisting and advising the grand jury at and during the investigation and finding of said indictment.

There is no doubt but that if the juror in question is not a legal juror of the county of Rock, this indictment should have been quashed. The defendant has a right to have the indictment quashed if any one of the grand jurymen that passed upon it is not a legal juror. When called upon to answer, it is the first opportunity allowed in many instances to examine the qualifications of the grand jurors. It is true that persons charged may, by our statutes, challenge grand jurors before they are sworn, but it frequently occurs that a person is presented by the grand jury, and the first intimation he has of it is a process in the hands of an officer. In 1 Chitty's Crim. Law it is said to be clear that a defendant, before

issue joined, may plead the objection to a grand juror in avoidance, but if he take no such exception before his trial, it seems doubtful how far he can take advantage of it. The questions raised in this case are, was David Burnet a legal juror? was Daniel F. Kimball legally authorized to appear before the grand jury as the district attorney?

The question of the competency of the juror depends upon the construction given to an act of assembly upon this subject. R. S. 267. The act concerning grand and petit jurors, section 1, provides that all persons who are qualified to vote for delegate to congress shall be liable to be drawn as jurors. The 12th section of the act to provide for and regulate general elections (R. S. 38) provides that no person shall be entitled to vote at any election in this Territory who has not attained the age of twenty-one years, who is not a free white male citizen, or a foreigner duly naturalized according to the act of congress on that subject, and who has not resided within this Territory, with the *bona fide* intention of becoming a citizen, for at least six months immediately previous to his application to vote. What constitutes a residence within this Territory with the *bona fide* intention of becoming a citizen? This law was made in a young Territory to suit the circumstances and situation of the people, and with a view to render the right of suffrage as favorable to the immigrants as possible, and we have to construe the law upon the same principle. The act seems to create a distinction between a *resident* and a citizen. In Webster and Walker's Dictionaries the verb "reside" means to live, to dwell, to be present. It is well known that many persons come into the Territory, purchase land and make improvements (which, no doubt, was the case with this juror) before their families arrive. They come in advance of their families to prepare a place for their abode. At the time of the passage of this act and before, it would have been impossible to obtain jurors in many counties if persons situated as this juror was could not have been called. We are disposed to construe

this act that the residence of a married man, contemplated by this act, does not depend upon that of his family, and that his intention to become a citizen must be ascertained from all his acts in connection with his residence. In this case there could have been no doubt of the juror's intention to become a citizen, for he had actually brought his family into this Territory, and has continued to reside therein. It is certain that a man cannot be a citizen of two States at the same time, but that question is not to operate against the manifest intention of the legislature. That question would properly come up on an objection to the vote of this juror in Ohio. All that we have to inquire into is, was the juror a resident in the Territory for six months, with a *bona fide* intention of becoming a citizen thereof? If the law is wrong, it rests with the legislature to correct it.

The second question is clear of all difficulty. Under the organic law of the Territory, "no person holding a commission under the United States, or any of its officers, except as a militia officer, shall be a member of the said council, or hold any office under the government of said Territory." The question could not be raised in this case which office the said Daniel F. Kimball rightfully held. The court could not step aside from the issue in the case and try his right to prosecute. He should be brought up in the way known to the law, or on application for a writ of *quo warranto*, where he could be heard. His holding the commission of district attorney at the time was sufficient to enable him to appear before the grand jury, and neither they nor the court could stop to inquire how many offices he held. It was sufficient that he held the commission of district attorney from competent authority, and as long as his commission remained without being superseded or vacated, the validity of his acts cannot be questioned. 11 Viner's Ab. 114; 7 Johns. 549; 5 Wend. 231; 9 Johns. 135; 15 Mass. 170; 1 Penn. 297.

We therefore affirm the decision of the district court in refusing to quash this indictment, and order that the same be certified to the district court.