STEPHEN COCKE, FOR THE USE OF THE COMMERCIAL BANK OF COLUMBUS, MISSISSIPPI, PLAINTIFF IN ERROR, *v.* JOSEPH A. HALSEY AND OTHERS, DEFENDANTS IN ERROR.

The constitution of Mississippi declares that clerks of the Circuit Court, Probate, and other inferior Courts, shall be elect by the electors of the county for two years. The legislature of Mississippi, by statute, declared that when, from sickness, or other unavoidable causes, the clerk of the Probate Court shall be unable to attend the Court, the judge of Probate may appoint a person to act as clerk pro tempore, who shall take an oath faithfully to execute the duties of the office, &c. Deeds of trust and mortgages are declared to be void against creditors and purchasers, unless they shall be acknowledged or proved, and delivered to the clerk of the proper Court to be recorded ; and they shall be valid only from the time they are so delivered to the clerk. Robert D. Haden was elected clerk of the Court of Probate, for the county of Lowndes, and during the two years for which he was so elected, he went to the state of Tennessee on business; and being absent when the Court of Probate sat, William P. Puller was, by the judge of the Court of Probate, appointed the clerk pro tempore; and having taken the oath of office, he executed the duties of clerk during the session of the Court, and afterwards, until the return of the regularly elected clerk. After the adjournment of the Court, a deed of trust, duly executed, by which certain personal property was conveyed for the benefit of creditors, was delivered to William P. Puller, and was by him entered for record. An execution was levied on the property thus conveyed by a creditor of the party who had executed the deed : the regularity of the recording of the deed was denied, on the ground that the clerk of the Probate Court pro tempore, had no authority to receive the deed of trust for record after the adjournment of the Court of Probate. Held, that the clerk pro tempore was authorized to record the deed of trust, under the constitution and law of Mississippi.

In every instance in which a tribunal has decided upon a matter within its regular jurisdiction, its decision must be presumed proper, and is binding until reversed by a superior tribunal; and cannot be affected, nor the rights of persons dependent upon it be impaired, by any collateral proceeding. Cases cited, Thompson *v.* Tolmie, 2 Peters, 157; The United States *v.* Arredondo, 6 Peters, 720; Voorhees *v.* The Bank of the United States, Ibid. 473; The Philadelphia and Trenton Rail Road Company *v.* Stimpson, 14 Peters, 458.

IN error to the Circuit Court of the United States for the southern district of Mississippi.

On the 24th March, 1838, James Carter and Company executed a deed of trust to William L. Moore, for the purpose of securing the payment of certain sums of money to the Commercial Bank of Columbus; by which they conveyed, among other things,

certain slaves, tnen in Lowndes county, Mississippi, in trust to sell the said property for the benefit of the Bank of Columbus. This deed was presented for record to the office of the clerk of the Court of Probate for Lowndes county, on the 24th day of March, 1838, the day on which it was executed; and was endorsed, "Received in my office for record on the 24th day of March. 1838. William P. Puller, clerk pro tem.". And it was afterwards certified to have been recorded on the same day, under his hand and seal, by William P. Puller, clerk pro tem.

At the time this record and certincate were made by William P. Puller, as clerk pro tempore, one Robert D. Haden was the clerk of probate for the county of Lowndes, duly elected, qualified, and sworn. Haden was duly elected in November, 1837, for two years, and entered upon the discharge of his duties some time in the month of February, 1839. Haden visited the state of Tennessee on business, and did not return in time to perform the duties of clerk at the March ferm, 1839. In consequence of his absence, Thomas Sampson, Esquire, judge of probates, upon the opening of the Court of Probate, at March term, 1839, appointed William P. Puller to act as clerk pro tempore during the absence of Haden. This deed was recorded by Puller, during the absence of Haden, but after the March term of the Court of Probate, not while the said Court was in session. Haden afterwards returned and resumed the duties of his office. The above described property was, by the trustee, left in the possession of James Carter and Company.

At the May term, 1838, of this Court, judgment in the above entitled case was obtained against the said James Carter and Company. Execution was issued upon this judgment, and was levied on the assigned negroes, in the possession of James Carter and Company. Upon the levy being made, the trustee came forward and claimed this property, and gave the necessary bond; and this issue is now before the Court to try the right to the said slaves.

If the deed of trust was properly and legally recorded, then it is admitted that the judgment in the above case is no lien upon said slaves, and that the trustee will be entitled to the same; otherwise, if the deed was not duly and legally recorded, the slaves are subject to the satisfaction of the said judgment.

[Cocke v. Halsey.]

The Court adjudged that the trust-deed was not duly and legally recorded; and that the said acts and proceedings of the said William P. Puller, as clerk pro tempore, in the recording of the said trust-deed, was without authority of law, and is altogether void; and so instructed the jury.

To this opinion the plaintiff excepted, and the jury having found a verdict according to the opinion of the Court, the plaintiff prosecuted this writ of error to the judgment of the Circuit Court on the verdict.

The case was submitted to the Court, on a printed argument, by Mr. Cocke, for the plaintiff; and was argued at the bar by Mr. Key, for the defendant.

In his argument, Mr. Cocke said,

The question involved in this case is, whether the deed of trust mentioned in the record, was properly recorded. This is to be determined, mainly, by the local laws of Mississippi. There are, nevertheless, some elementary principles involved.

The statute and constitutional law of Mississippi, which is supposed to bear upon this subject most directly, may be found as hereafter pointed out. By the act of 13th June, 1822, deeds of conveyance were required to be recorded by the clerk of the County Court of the proper county. Alden's Revision of the Laws of Mississippi, 297, sec. 1. This, by the same section, is declared to be in the county in which the land is situated.

By sec. 4, p. 298, deeds in relation to personal property shall be recorded in that county in which such personal property shall remain. Same page, sec. 5, provides that deeds of trust and mortgages shall take effect from the time they are delivered to the clerk to be recorded, and then only; but other deeds shall take effect from the time they were sealed and delivered, if recorded within three months. Sections 6, 7, 8, 9, 10, prescribe more in detail the duties of the clerk. By the act of the 28th June, 1822, Alden's Revision, p. 183, sec. 7, this language is used: "During the vaca cy in the office of clerk of a County Court, and during the unavoidable absence of the principal clerk and his deputies, if any he have, the Court in term time, or the presiding justice thereof in vacation, may appoint a clerk pro tempore, who, after taking the necessary oath of office, shall be authorized to perform

[Cocke *v.* Halsey.]

the duties of a clerk, and during his continuance in office shall be entitled to all the fees thereof."

By the act of the 16th of February, 1828, Alden's Revision, p. 194, the judge of Probate of the county and the justices of the County Court then in commission, constitute the Court denominated the County and Probate Court; and the latter part of the same section provides that the clerk of the County Court then in office should be clerk of said Court.

Thus the law on this subject stood, until the year 1833, when the revised constitution of Mississippi was adopted. At p. 39, Alden's Revision, will be found the revised constitution. Sec. 4, title " Schedule," provides that " all laws then in force in this state, not repugnant to this constitution, shall continue to operate until they shall expire by their own limitation, or be altered or repealed by the legislature."

By article 4 of the constitution, (Judicial Department,) sec. 19, Alden's Revision, p. 34, " the clerk of the High Court of Errors and Appeals shall be appointed by said Court for the term of four years; and clerks of the Circuit, Probate, and other inferior Courts, shall be elected by the qualified electors of the respective counties, and shall hold their offices for the term of two years."

By article 5 of the revised constitution, (Executive Department,) sec. 13, Alden's Revision, p. 34, " all vacancies not provided for in this constitution, shall be filled in such manner as the legislature may prescribe."

By the act of the 2d of March, 1833, Alden's Revision, p. 198, sec. 70, "all vacancies, either in the office of judge or clerk of the said Court, shall be filled by election at the several precincts of the county, to be held at such time as the board of county police may prescribe, and on such public notice as may be provided for by law."

By the same act of the second of March, 1833, Allen's Revision, p. 199, sec. 73, it is provided, " that, in case the clerk shall be at any time unable, from sickness or unavoidable causes, to attend said Court, it shall be lawful for the judge of probates to appoint a clerk, to act as clerk pro tempore, who shall take an oath faithfully to discharge all the duties of his office, and for services rendered by the said clerk he shall be entitled to the fees allowed by law to the clerk of said Court."

[Cocke v. Halsey.]

For the purpose of reversing the opinion of the Circuit Court, Mr. Cocke, for the plaintiff in error, contended,

1. That the deed of trust was properly recorded.

2. That the appointment of William P. Puller "clerk pro tempore," was in conformity with the laws of Mississippi, and valid.

3. That the regularity of his appointment could not be collaterally inquired into.

4. That it was competent for the Probate Court to make the appointment.

5. That as Puller was clerk de facto, by appointment, acting under colour of office, his acts were valid as respects the rights of third persons and the community; whether he was clerk de jure or not.

6. That it is not competent for the federal tribunals to declare a state law, regulating her local and municipal police, void or otherwise unconstitutional; unless in conformity with the decisions of state tribunals, when the Constitution of the United States is in no manner contravened.

7. That Puller's right to discharge the duties of clerk continued during the absence of Haden, and until Haden took the office, and resumed the duties of it.

To ascertain the intention of the legislature, laws on analogous subjects may be safely referred to. If this is allowable, we will find a similar provision in reference to the clerks of the Circuit Courts. Thus, (Alden's Revision, page 118, sec. 13,) that "during the vacancy of the office of clerk in any Circuit Court of Law, and during the unavoidable absence of the principal clerk and his deputies, if any he have, the judge thereof, either in term-time, or in vacation, may appoint a clerk pro tempore, who, after taking the necessary oath of office, shall be authorized to perform the duties of a clerk, and, during his continuance in office, shall be entitled to all the fees thereof." So if, from any cause, there be a just exception to the sheriff, the coroner may act; or, if the cause extends to the coroner, then a justice of the peace may perform the duty. Alden's Revision, p. 334, sec. 15.

In the case before us, the agreement shows that Haden, the clerk elected, was absent in the state of Tennessee. It was true there was no vacancy. Haden was the incumbent elect,

and consequently there could be no election under the law. His absence was, however, about to create a kind of interregnum in the discharge of the duties of clerk. To prevent this, the statute above cited appropriately interposed itself, and provided a clerk pro tempore. The power of the judge of probate to do this is the question. It is contended,—

1. That the appointment of William P. Puller, clerk pro tem. of the Probate Court of the county of Lowndes, was in conformity with the law of Mississippi, and, in the absence of Haden, the clerk elect, was directly required by the statute to be done. See Alden's Revision, page 183, sec. 7, and page 199, sec. 73, above cited.

2. The appointment of the Court is itself conclusive evidence that the absence of Haden was an unavoidable absence, and cannot 'now anywhere be questioned. The Court which made the pro tem. appointment was alone competent to decide the question; and, having made the appointment, its determination is conclusive, either that Haden was sick, or absent from unavoidable causes; and the propriety of that decision cannot now anywhere be impeached, or collaterally inquired into. Stimpson v. The Trenton Railroad Company, 14 Peters, 458.

If it be true that there can be no clerk pro tem. of the Probate Court, so there could be no clerk pro tem. of the Circuit Court; nor could a coroner be allowed in any contingency to discharge the duties of sheriff, nor a justice of the peace to discharge the duties of coroner. The federal judiciary would thus undertake to determine that the whole system of the Mississippi legislation, in seeking to prevent an interregnum in the offices, and a failure of justice to her citizens in her municipal police, would be invalid.

It cannot be a sound construction of the constitution of Mississippi to suppose that, if a clerk should, at any time, be unable, from sickness or other unavoidable causes, to attend to the duties of his office, the framers of the constitution intended that the interest and business of the country should be suspended. If the constitution is to be construed as denying legislative action as to matters of this kind, not provided for in the constitution, then it must be considered that the convention intended that if the clerk elect should be unable, from sickness or unavoidable causes, to

[Cocke v. Halsey.]

attend to the duties of his office, the citizen for the time should be without any power to perfect his legal rights, by having his deeds recorded; in other words, that as a trust-deed, under the laws of Mississippi, can have no validity until it be delivered to the clerk to be recorded, the convention must have intended that if the clerk should be unable, from sickness or other unavoidable causes, to attend to the duties, that, during that time, no right could be created by way of trust-deed; and if the sickness, or other unavoidable causes, should continue longer than three months, titles by deed should be ineffectual altogether. It is no answer to say the clerk might have a deputy. In the case of the clerk, there was no deputy; nor does the constitution provide any more for a deputy clerk than it does for a clerk pro tempore.

3. But if it be contended that there is no such officer as clerk pro tem. known to the constitution of Mississippi, (as such was the opinion of the Court below,) then it would follow that, as the legitimate business of a constitution is to regulate the general organic law, the duties of regulating in detail the various tribunals. and jurisdictions created by it, have been wisely left to legislative discretion and action. The legislature having provided for the very state of things here in controversy, the counsel has not been enabled to discover any thing in the constitution of Mississippi interdicting the authority of the legislature on the subject.

4. The constitution nowhere requires deeds to be recorded at all, nor did (as it is believed) the common law. The legislature might dispense with the recording of deeds altogether; or they might have em recorded by a notary public, city magistrate, or by any private citizen by name, and there would certainly be nothing unconstitutional in it. But the legislature have thought proper to give the recording of deeds to the clerks of probates, and, in certain contingencies, to the clerks pro tem. of that Court, to be appointed by the judges of probates. There cannot, it seems, be any thing wrong in this; and it is certainly the manner in which the discretion of the legislature has been exercised; and nothing is known which would justify the Court below, or this Court, in saying they have been wrong.

5. The recording of deeds is not an incident of any Court, or its jurisdiction. If even it were not competent for the legislature to provide for a clerk pro tem. of the Probate Court, to be ap-

G 2

[Cocke *v.* Halsey.]

pointed as to the matters peculiar to the jurisdiction of that tribu
nal, yet there is nothing in the recording of deeds which can, by
any possibility, enter into such considerations.

6. The terms, during the unavoidable absence of the princi
pal clerk, as mentioned in sec. 7, page 183, and that in case
the clerk shall be at any time unable, from sickness or unavoid-
able causes, to attend said Court, it shall be lawful for the judge
of probate to appoint a person to act as clerk pro tempore, who
shall take an oath faithfully to discharge all the duties of his office;
and for services rendered by said clerk, he shall be entitled to the
fees allowed by law to the clerk of said Court, as mentioned in
sec. 73, page 199; cannot justly be limited to the term of the
Court which made the appointment. It is true the law requires
the Court to make the appointment; but the last section defines
the tenure of the office to continue commensurate with the causes
which made it necessary to make the appointment; otherwise
he could not discharge all of the duties of his office. Again: It
is the universal principle, in the construction of statutes, to regard
the reason and spirit of the law, and the causes which induced
the legislature to enact it. In the matter before us, it was most
obviously the motive with the legislature to prevent an inter-
regnum in the offices, and to hinder a failure of justice. The
business confined to the term of the Court is not one hundredth
part, in interest and amount, of that which, by the laws, is
allowed to be done by the clerk in vacation. If the legislature
intended to provide for the matters of less importance only, it
appears they must have been guilty of extreme ignorance, folly,
or wickedness; the which, this Court would reluctantly ascribe
to them. This Court will give the statute the construction
claimed.

7. It is confidently believed that the law is every way regular
and proper, and that there does not exist any possible valid ob-
jection to the deed, or the time or manner of its execution, pro-
bate, or to the recording of it. But whatever may be the nature
of the legal rights or liabilities of Haden and Puller, as to the
office, Puller being the incumbent by appointment, discharging
the duties of the office under colour of title, being the clerk de
facto, whether he were clerk de jure or not, all of his acts, so far
as the rights of the community and third persons are concerned,

are valid. The King v. Leslie, Andrews' Rep. 163; Taylor v. Skrine, 2 S. C. Rep. 696; Jones v. Gibson, 1 N. H. Rep. 268, and the authorities there; Keyser et al. v. Kessam, 2 Rawles's Rep. 139; Buckham v. Reigles, 15 Mass. Rep. 180; Nason v. Wellingham, 15 Mass. Rep. 170; Fowler v. Babee, 9 Mass. Rep. 231; The People v. Collins, 7 Johns. Rep. 550; 7 American Common Law Reports by Wheeler, 142; Biddle v. The County of Bedford, 7 Serg. and R. 392 and 393. Indeed, this doctrine is now regarded as settled, as elementary in principle, and no longer open to discussion.

8th. The District Federal Court of Mississippi was not, nor is this Court competent to declare a state law unconstitutional, which is in conformity with the decisions of the state tribunals; unless some provision of the Constitution of the United States has been contravened. As there is nothing in this law in the least incompatible with the Constitution of the United States, it was the duty of the Court below, and is now the duty of this Court, to give effect to the state laws. Jackson v. Lamphire, 3 Peters, 289; Shelby et al. v. Guy, 11 Wheat. Rep. 361.

If this is not correct, it appears to involve the right of the federal tribunals to enter into the local, the municipal police of the several states, and abolish it—a doctrine unprecedented in its assumptions, and one which will find no toleration in this Court.

The legitimacy of appointments, elections, or qualifications of an incumbent in office, cannot be inquired into, collaterally; but their acts are valid, until their acts are regularly superseded. If this were not so, the naming of only two of the officers, required to be elected under the constitution of Mississippi, will show us to what infinity of confusion, and inextricable difficulties, the doctrine contended for by the opposite party would lead. For example: By the third section of the fifth article of the constitution of Mississippi, (Alden's Revision, p. 33,) the governor is required to be at least thirty years of age; that he shall have been a citizen of the United States for twenty years, and shall have resided in the state at least five years next preceding the day of his election.

Mr. Key, for the defendants in error.

1. By the constitution of Mississippi, the act of the second of

[Cocke v. Halsey.]

March, 1833, of the Mississippi legislature, is void. The case stated shows there was no vacancy in the office. If there was, the constitution shows how the vacancy was to be filled, and that the legislature could not alter it. Therefore, there was no power in the Court to make the appointment; and Puller was not clerk of probates, having authority to receive and record the deed.

2. Again. Suppose the law valid, what authority did it give? Only to meet the exigency, and act as clerk during the session of the Court, (one week,) this being the only evil the law sought to remedy; and as the power to appoint was only for such specific purpose, and on a particular contingency, such purpose and the occurrence of such contingency cannot be presumed, but must appear on the face of the proceedings.

Mr. Justice Story, and this Court have decided that otherwise it is a nullity. 1 East, 64; 8 T. Rep. 178; 4 Wheat. 77; 6 Wheat. 127; 2 Peters, 523.

3. Again. What authority did it give? Only for the session of the Court, pro tempore; as if it had said, till the end of the term. This was all that ought to have been done; all that was necessary; and all that was done.

If William P. Puller, therefore, on such an appointment, held over, it was the usurpation of the office, without authority, or the colour of authority; and then all his acts are nullities.

4. And this answers the argument and the authorities cited to show that Puller was clerk de facto, though not de jure; and that his official acts, as regards third persons, are valid.

He was not clerk de facto under colour of right, but a usurper; or holding over after his authority was gone, and there was no colour for his official acts.

What is an officer de facto, holding under colour of right, to whose official acts this sanction is given?

1. Those who hold under an authorized appointing power, but irregularly or improperly appointed, or not duly qualified. 2. Where the office is not full.

But here there was no authority to appoint. And if there was, the time of his appointment was over; and he was holding wrongfully, without any colour of right. So is 15 Mass.; 5 Yerg. 271; 1 East, 79; King v. Corporation of Bedford, Andrews, 163.

3. He could not be clerk de facto, because there was then a clerk de jure; and there cannot be both at the same time. Suppose there are acts done by Haden at the same time, (and non constat, that there were not,) such acts would be valid.

4. He was not clerk de facto, because he did not take the name of the office clerk pro tempore. The recording law requires the clerk to do the act. Here it is done by a clerk pro tempore. No such officer recognised by the constitution.

5. Again. If he was clerk de facto, he could only do necessary acts; attend the Court. This was all he need have done, and all he was in any way authorized to do, and for a limited time. It was so held in Andrews, 166, 173; King *v.* Lisle, Andrews, 163.

Finally, it is settled by the Mississippi law of 1840. This shows that the legislature have recognised the rights of those with whom the official acts of Puller interfered; have declared his acts void, where they interfered with such rights, and that such rights shall be secured. This is a Mississippi statute, and a legislative construction of it; and the Courts there will no doubt respect this act of 1840: and this Court will not interfere and advise them to nullify it.

Mr. Justice DANIEL delivered the opinion of the Court.

This cause comes before this Court upon a writ of error to the Circuit Court of the United States, for the southern district of Mississippi.

The statement of the case upon which the questions presented here for decision arise, is, as agreed by the parties upon the record, substantially the following:

On the 24th of March, in the year 1838, James Carter and Lewis Grigsby, merchants, executed a deed of trust to one William L. Moore, as trustee, to secure the payment of certain sums of money to the Commercial Bank of Columbus. This deed was regularly acknowledged by the grantors, before a justice of the peace, on the 29th of March, 1839, and delivered to one William P. Puller, who had been appointed clerk pro tempore of the Probate Court of the county of Lowndes, in said state, and who recorded the deed in the office of the clerk of probate for said county, and endorsed thereon a certificate of record, signed Wil-

11

liam P. Puller, clerk pro tempore. That at the time this record and certificate were made by Puller, as clerk pro tempore, one Robert Haden was the clerk of probate for the county of Lowndes, duly elected, qualified, and sworn: that Haden was elected in November, 1837, for two years, and entered on the discharge of his duties in the month of February, 1838; that Haden visited the state of Tennessee on business, and did not return in time to perform the duties of clerk, at the March term of 1838. In consequence of his absence, the judge of probate, upon commencing the Court of Probate of the March term of 1838, appointed Puller to act as clerk during the absence of Haden. The deed of trust to Moore was recorded by Puller during the absence of Haden, but after the March term of the Court. Haden afterwards returned and resumed the duties of his office.

The original trustee, William L. Moore, having died, the Superior Court of Chancery, of the state of Mississippi, at the January term, 1839, duly appointed Stephen Cocke, the plaintiff in error, trustee in lieu of Moore.

At the May term of the Circuit Court of the United States for the southern district of Mississippi, the defendants in error obtained a judgment against James Carter and Company. Execution was sued out upon this judgment, and levied by the marshal on the property mentioned in the trust-deed, in the possession of Carter and Company. Upon the levy being made, Stephen Cocke, the trustee, claimed the property, gave the bond required in such cases by the law of Mississippi; and an issue was duly made to try the right to the property. Upon the trial of this issue, the following question was submitted to the Court for its opinion thereon, viz.: That if the deed of trust was properly and legally recorded, then it was admitted that the judgment in question was not a lien upon the property conveyed by the deed, and the trustee was entitled to the same; otherwise, if the deed was not legally recorded, the property was subject to satisfaction of the judgment. Upon this question, the Court below adjudged that the trust-deed was not duly recorded; that the acts of Puller, as clerk pro tempore, in recording the deed, were without authority of law and altogether void; and so instructed the jury. To this opinion of the Court, thus given, the plaintiff in error excepted; and brings that opinion before this Court for examination.

[Cocke *v.* Halsey.]

The fourth article of the constitution of Mississippi, thirty-first section, declares, that "the judicial" power of that state shall be vested in one High Court of Errors and Appeals, and such other Courts of Law and Equity as shall be afterwards provided for in that constitution. The same article, after authorizing and ordaining various superior tribunals in which the judicial powers shall be vested, at length, in the eighteenth section, declares, that there shall be established in each county in the state a Court of Probates, the judge whereof shall be elected by the qualified electors of the county, for a period of two years. The nineteenth section of the same article declares, that the clerks of the Circuit, Probate, and other inferior Courts, shall also be elected by the qualified electors of the county, for the period of two years. See Laws of Mississippi, by Howard and Hutchinson, 24, 26.

The legislature of the state, in organizing their judiciary, as it was indispensable they should do, (as the constitution had limited its own action to the direction that the Courts therein named should be established, leaving their organization and distribution to the legislative authority,) by a s .ute passed in March, 1833, and by sections 1, 2, and 3, of that statute, established a Court of Probates in each county of the state; provided for the election of judges and clerks of the several Courts; prescribed to them the oath of office they should take, and to the clerks the bonds they should ex 'ute, before assuming their official functions. Laws of Mississippi, 469.

By the eighth section of the statute, the legislature declared, that in case the clerk of probate "shall be at any time unable from sickness, or other unavoidable causes, to attend said Court, it shall be lawful for the judge of probate to appoint a person to act as clerk pro tempore, who shall take an oath faithfully to discharge all the duties of his office," &c.; vide p. 470, Laws of Mississippi. By the fifth section of the same statute, vacancies in the offices of judge and clerk are to be filled as the original appointments were made; viz., by election.

By the fifth section of another statute of Mississippi, concerning real estate and conveyances, passed June 13, 1822, it is declared, that deeds of trust and mortgages shall be valid as to subsequent purchasers for valuable consideration without notice, and as to all creditors, from the time when such deeds of trust or

mortgages shall have been acknowledged, proved, or certified, and delivered to the clerk of the proper Court to be recorded, and from that time only. From this provision the question of priority arises.

In support of the decision of the Circuit Court, it has been insisted that the power of the judge of the Probate Court to appoint a clerk of probate pro tempore, is limited to the term of the Court, and to the exigences and necessities of the term; and does not extend to a period beyond the term, nor to any acts performed by the person so appointed out of Court.

From this position, claimed by counsel as a legitimate deduction from the statute, it is argued that the clerk, having been appointed by an exercise of power wholly illegal and void, nay, even without colour of authority, his acts, too, must be merely void, and not entitled to the effects properly attributable to the acts of one who may be considered as an officer de facto, in contradistinction to him whose commission and qualification are in all respects regular, and who therefore may be called an officer de jure and de facto.

In reasoning from the language of the statute, it would seem difficult to perceive any thing in it which limits the appointment pro tempore, to the session of the Court. The expression in the law is, "from sickness or unavoidable causes;" now, it is quite as probable that these causes would operate beyond, as well as during the continuation of the Court. The only fair inference deducible from the words of the law is, that the causes requiring an appointment, should, like the appointment itself, be temporary; so that the provision of the statute should not be perverted to cover a permanent disqualification of the regular clerk, and thereby prevent his removal or the election of a successor, under proper circumstances. The precise duration of that temporary cause, it could hardly have been the intention of the lawmakers to define. To ascribe to them an intention to restrict the duties of a clerk pro tempore to the session of the Court, would be imputing to them an act of utterly useless legislation; since none can fail to perceive, on looking into the law, that the duties of the clerk of probate are as extensive and as important, during vacation, as they are during term-time; if, indeed, they are not more so.

Several authorities have been cited in argument, some from

the English and some from the American cases, in order to show that the recording of the trust-deed in question by the clerk of probate cannot be supported even as the act of the clerk de facto. These authorities, however, do not establish the position they have been brought to maintain; and in some instances, they operate directly against it. The first case relied on (and it is a leading case) is that of The King v. Lisle, Andrews, 163, 174. This was a quo warranto to remove a burgess of Christ Church, on the ground that he had been nominated by one Goldwire, calling himself mayor of the corporation, when he had never been appointed mayor. The Court say, the nomination by Gold-wire could not be supported, because he was not even by any colourable title or pretext mayor of the corporation; evidently putting his act on the same footing with an attempt at usurpation by any other private person. There is a remark by the Court in delivering its opinion, which is regarded as not without its bearing upon the present case; and that remark is this, "that supposing Goldwire was mayor de facto, yet the acts here found to be performed by him are not good; because they were not necessary for the preservation of the corporation." In these cases the Court say, "the proper distinction is between such acts as are necessary and for the good of the body, which comprehend judicial and ministerial acts, and such as are arbitrary and voluntary." The second case from the English books is that of Knight and Wife v. The Corporation of Wells, 1 Lutwyche, 509, 519. This was an action of debt against the corporation, upon their bond to the wife of the plaintiff; and the objection taken to the recovery was, that the person who put the corporate seal to the bond, was not qualified by the charter to be mayor. He had been elected to the office of mayor, however. The case seems to have been much considered, for it was twice argued; and it was resolved by all the Court, that although the mayor might not be qualified according to the charter, yet he had been elected, and, in virtue of his election, was mayor de facto, and that therefore all judicial and ministerial acts performed by him were good.

The cases of the People v. Collins, 7 Johns. 549, and of McKin-stry v. Turner, 9 Johns. 135, are in strictest accordance with the authority from Lutwyche. In the People v. Collins, the

Court say, in speaking of the powers exercised by the officers whose acts were impeached; " They were commissioners de facto, since they came into office by colour of title; and it is a well settled principle of law, that the acts of such persons are valid when they concern the public, or third persons who have an interest in the acts done; and this rule is adopted to prevent the failure of public justice. The limitation of this rule is as to such acts as are arbitrary and voluntary, and do not affect the public utility. The doctrine on this subject is to be found at large in the case of The King v. Lisle, Andrews, 263." So, too, in 15 Mass. 173, Bucknam v. Ruggles, this matter is very fully treated. The Court say that, although the officer did not comply with the requisites of the constitution, yet, having been appointed, and thus having colour of title, his acts are valid in respect to third persons who may be interested in such acts : that such a rule is necessary to prevent a failure of justice. Besides, the officer's title to his office ought not to be determined in a collateral way. In addition to other authorities to this point, is quoted 3 Cru. Dig. tit. Officer, sec. 71, 75, for the principle that, by the test and corporation acts in England, all persons are disabled in law to all intents and purposes to hold certain offices, unless they take the oaths required; yet, notwithstanding this disabling clause, it has been held that the acts of officers not qualified by those statutes may be valid as to strangers. The case of Williams et al. v. Peyton's Lessee, cited for the plaintiff in error, from 4 Wheat. 77, is thought to have no application to the question now under consideration; all that was ruled in that case was this, that where a title depends upon the acts of a ministerial officer to be performed in pais, proof of the performance of those acts is necessary to sustain such title : a principle which none perhaps will dispute; but, whether affirmed or denied, cannot apply to the present case. So, too, the case of Davidson and another v. Gill, cited from 1 East, 64, having been ruled exclusively upon a provision of the statute 13 Geo. 3, c. 78, requiring that certain proceedings of justices, should, in relation to closing and opening ways, in order to give them validity, appear on the face of those proceedings, in a prescribed schedule or form set forth in the statute; is considered as wholly inapplicable.

If then the appointment and the acts of the clerk of probate

depended for their validity upon the principles which apply to the acts of officers de facto, a just interpretation of the authorities adduced in behalf of the plaintiff in error, gives validity to both. That the judge had power to appoint a clerk pro tempore, seems never to have been questioned; that he did appoint is equally indisputable: the irregularity alleged is in the failure to limit the appointment to the term of the Court. Admit, for the present, that the appointment should have been thus limited, and that the clerk has admitted the deed to probate after the term; yet, in his character of clerk, was he not within the very definition of the authorities, and within the concessions of the counsel, clerk de facto, acting colore officii; and must not his acts therefore be valid so far as regards third persons who are interested in them? An affirmative answer to this inquiry is unavoidable.

But the appointment of this officer, and his acts when so appointed, rest upon a foundation still broader and firmer than that which sustains the actings of an officer de facto. By the law of Mississippi, the judge had the power to appoint, pro tempere, whenever from sickness or unavoidable causes the clerk could not attend.

By the investiture of that power, it remained with the judge, in the exercise of judicial discretion, to decide upon the propriety and necessity for the execution of the power: he did decide upon them; and he must be presumed to have decided properly.

The correct legal principle applicable to such proceedings is this: That in every instance in which a tribunal has decided upon a matter within its regular jurisdiction, its decision must be presumed proper, and is binding until it shall be regularly reversed by a superior authority; and cannot be affected, nor the rights of persons dependent upon it be impaired, by any collateral proceeding. This principle has been too long settled to admit of doubt at this day, and has been repeatedly and expressly recognised in this Court, as in the cases of Thompson v. Tolmie and others, 2 Peters, 157; The United States v. Arredondo, 6 Peters, 720; Voorhees v. The Bank of the United States, 10 Peters, 473, and The Philadelphia and Trenton Rail Road Company v. Stimpson, 14 Peters, 458. It cannot then be permitted, in this collateral inquiry, to insist that the judge has either misapprehended or transcended his authority: he has exercised the discretion vested

[Cocke *v.* Halsey.]

in him by the statute; that discretion has led him to the conclusion, that the necessity for an appointment was coextensive with the absence of the ordinary clerk, an absence deemed by him unavoidable; and the discretion of the judge pro hac vice, at any rate must be conclusive. But beyond these legal presumptions, this Court, upon a review of the constitution and statute of Mississippi, are satisfied that the appointment of the clerk of probate pro tempore, was fully warranted in the manner and to the extent in which it was made. They therefore decide that the decision of the Circuit Court for the Southern District of Mississippi is erroneous, and accordingly do reverse the same.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Mississippi, and was argued by counsel. On consideration whereof, It is now here ordered and adjudged by this Court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs; and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions for further proceedings to be had therein, in conformity to this opinion, and according to law and justice.