### LYNCH v. COLLINGS et al.

First Division. Ketchikan. July 18, 1923.

No. 572–KA.

**1. Judgment ☞540—Res Judicata.**

A judgment or decree set up as a bar by a plea or relied on as evidence of estoppel, to be conclusive, must have been made, first, by a court of competent jurisdiction; second, between the same parties; and, third, for the same purpose.

**2. Judgment ☞713(2), 717—Estoppel.**

A judgment estops not only as to every ground of recovery or defense actually presented to the action, but also as to every ground which might be presented. But, where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel as to those matters in issue or points controverted, upon the determination of which the finding or record was rendered, or every ground which might have been offered in that action as a defense. If the plaintiff in this action might have offered the defense set forth in the affirmative reply in the former action, she is estopped from pleading it in this action.

---

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Judgment ⬧518—Collateral Attack.**

A collateral attack on a judgment is any proceeding which is not instituted for the express purpose of annulling, correcting, or modifying such decree or enjoining its execution.

**4. Courts ⬧1—Judgment ⬧470—Want of Jurisdiction.**

Jurisdiction is the power, lawfully conferred, to deal with the subject involved in the action. If the court had jurisdiction of the person, and had authority to pass upon the general abstract question as to the right of possession or title to the property in question, and to determine and adjudge whether the particular facts presented called for the exercise of that authority, then its judgment must be conclusive as against a collateral attack, however erroneous.

**5. Judgment ⬧489—Disregarded in Collateral Proceedings, When Record Shows Want of Jurisdiction.**

Where it appears by the record itself that the judgment of a court of general jurisdiction has been rendered without jurisdiction either of the subject-matter of the person of the defendant, or, in actions purely or quasi in rem, of his property, the judgment may, in collateral proceedings, be disregarded and treated as a nullity.

This action is brought under chapter 32 of the Code of Civil Procedure of Alaska, and is an action to recover the possession of real property. The plaintiff's complaint sets forth her possession of the property on and prior to June and August, 1922, that she was ousted and dispossessed thereof by the defendants on said dates, and that the defendants ever since have been and now are wrongfully and unlawfully withholding the possession thereof, to her damage, and concludes with a prayer for judgment for the recovery of the possession of the tract of land of which she was dispossessed, and for damages and costs and disbursements.

The defendants, answering, enter a plea in the nature of a plea in bar or estoppel, setting forth a former judgment wherein the defendants in this action, Charles Deppe and T. J. Pennell, as receivers of the Alaska Investment Company, and the Alaska Investment Company, were plaintiffs, and William Lynch and Mrs. William Lynch were defendants, rendered by this court in Ketchikan in the year 1921.

The plaintiff, replying, first denies all the allegations of the answer or plea in bar of the defendants, and further, by way of affirmative reply, sets up certain facts which she deems suf-

ficient to avoid the effect of the former judgment. To this affirmative matter in the reply, the defendants have interposed a demurrer on the ground that the same does not state facts sufficient to reply to the matters set forth in the answer of defendants. The complaint is somewhat involved, and, in order to determine the true controversies between the parties, it is necessary to set forth the substance of the pleadings.

The plaintiff, in her complaint, alleges, in substance, that she is a native of Indian blood, of a family residing on the upland adjacent to the tract in controversy on the date of the cession of Alaska to the United States; that the particular tract claimed by her was reserved by the Secretary of the Interior from sale or occupancy by other than such natives of Alaska as a landing place for their canoes and other craft, under the fifth provision of section 10 of the act of May 14, 1898 (48 USCA § 464; U. S. Comp. St. § 5091); that the adjacent tract is shore and upland, known as lot 3, block 18, of the town site of Ketchikan, and is held in trust by the town site trustee of said town for the use and benefit of said natives, including the plaintiff; and that under the laws of the United States and on June 14, 1922, plaintiff was in peaceable possession of and residing upon the tract of land in controversy in this action, which tract is then described by metes and bounds, with reference to lot 3, block 18, and other tracts in the town of Ketchikan. Plaintiff further sets forth in her complaint that, while she was occupying and residing on the tract of land in controversy, the defendants, on June 14, 1922, and August 26, 1922, entered in and upon said tract, and wrongfully and unlawfully ousted and ejected her therefrom, and ever since and now do wrongfully and unlawfully withhold possession thereof from her, to her damage, concluding with a prayer that she recover possession of the said tract and for damages.

To this complaint the defendants answer with a plea in bar, setting forth the judgment entered in this court, wherein the defendants Deppe and Pennell and the Alaska Investment Company were plaintiffs, and William Lynch and Mrs. William Lynch were defendants, in which the defendants Deppe and Pennell, as receivers, and the Alaska Investment Company, were adjudged the owners and entitled to the possession of a tract of land which included the tract in controversy in this action, as against William Lynch and Mrs. William Lynch; that the

defendant Mrs. William Lynch answered in the prior action; that a trial was had before a jury, and that the verdict of the jury was in favor of the plaintiffs and against the defendants in that action, and a judgment was duly rendered, which judgment is set out in full in the plea in bar; that the plaintiff in this action, Jennie Lynch, is the same person described in the former action as Mrs. William Lynch; that no appeal was taken from the judgment in said action, and the same became and is now a final judgment, awarding to the defendants Deppe and Pennell and the Alaska Investment Company the tract of land in controversy in this action; and that the defendants Collings and Ryus are successors in interest to the defendants Deppe, Pennell, and the Alaska Investment Company.

In replying to this answer, the plaintiff first denied all the allegations of the answer or plea in bar, and then set forth an affirmative reply, in its substance as follows: That at all the times mentioned in the defendants' answer and plea in bar the plaintiff was an Indian woman of the aboriginal race of Alaska; that she and her people had resided from time immemorial at or in the vicinity of Ketchikan creek, within the limits of the town of Ketchikan; that the land in controversy was at all times, since August 5, 1905, a part of the land reserved by the Secretary of the Interior for the natives residing there, for their use and benefit, and upon which they had authority to land, camp, and reside; that the defendants in this action were and now are of the white race, and not native Indians; that the plaintiff was at all the times mentioned an Indian, without education or experience in business or legal matters, and had not at any time beeen advised of her rights in the premises; that the defendants were at all times mentioned real estate men, and were acting together in a conspiracy to eject, wrong, and defraud the Indians claiming the shore lands immediately back of and adjoining the land occupied by plaintiff and described in the complaint; that in pursuance of such purpose the said defendants purposely and wrongfully did obtain from the Indians and members of plaintiff's family certain deeds to the shore lands so occupied by the said Indians, including the plaintiff, without authority of law and for an inadequate consideration, and that by virtue of the said fraudulent and void deeds so obtained the defendants do now claim the title to the tide lands lying immediately in front of said shore lands, of which the

land in controversy is a part, which said shore lands were part of said tide and shore lands reserved to the use of said Indians on August 5, 1905; that the defendants, so acting together and in a conspiracy to obtain said land so reserved to the Indians from the said Indians, including the plaintiff, began and carried on this and all the litigation and suits so set up and described in the defendants' plea in bar, and for such purpose procured the court to enter a pretended and void judgment therein, in violation of the laws of the United States, without lawful right and jurisdiction so to do; and that the said judgment, so described and alleged in the plea in bar, was and now is void and of no validity, and that it is not a bar to plaintiff's rights to the said property.

Wickersham & Kehoe, of Juneau, for plaintiff.
A. H. Zeigler, of Ketchikan, for defendants.

REED, District Judge. The reply to the answer so set up by the plaintiff, thus demurred to by the defendants, raises one of the most difficult questions arising in the courts, and a great deal of discussion has arisen as to what judgment may be properly pleaded as a bar to an action, and how far and to what extent such judgments may be avoided in a collateral proceeding. The defendants herein claim that the adjudication and judgment in the first action estops plaintiff from bringing this action, while the plaintiff sets forth in her affirmative reply facts which she claims would render the judgment void and of no effect, and that the same therefore may be attacked collaterally.

There is no question but that a void judgment may be attacked collaterally; but what is a void judgment, as distinguished from a voidable judgment, is a question which has caused much discussion among the courts. What constitutes a res judicata, so as to render a judgment a bar in estoppel, has been numerous times before the court, and it might be well to refer to some of these decisions. In Bigelow v. Winsor, 1 Gray, 299–303, Chief Justice Shaw, of the Supreme Court of Massachusetts, said:

"To ascertain whether a past judgment is a bar to another suit, we are to consider, first, whether the subject-matter of legal controversy, which is proposed to be brought before any court for adjudication, has been drawn in question, and within the issue of a former judicial proceeding, which has terminated in a regular judg-

ment on the merits, so that the whole question may have been determined by that adjudication; secondly, whether the former litigation was between the same parties, in the same right or capacity litigating in the subsequent suit, or their privies, respectively, claiming through or under them, and bound and estopped by that which would bind and estop those parties; and, thirdly, whether the adjudication was had before a court of competent jurisdiction to hear and decide on the whole matter of controversy embraced in the subsequent suit. It is no objection that the former suit embraced more subjects of controversy, or more matter than the present; if the entire subject of the present controversy was embraced in it, it is sufficient; it is res judicata."

In Aspen Min. & Smelting Co. v. Nixon, 4 How. 467–497, 11 L. Ed. 1059, the Supreme Court say that a judgment or decree set up as a bar by a plea or relied on as evidence of estoppel, to be conclusive, must have been made, first, by a court of competent jurisdiction; second, between the same parties; and, third, for the same purpose.

Considering the present action with the former action pleaded as a bar, it is evident that the purpose of the two actions, or subject-matter of the two actions, is identical. While a copy of the complaint in the former action is not set out in the answer or plea in bar of the defendants in the present action, the summons, the answer, and the verdict and judgment are set forth, and these show the purpose and subject-matter of that action was the possession of a specified tract of land, within the jurisdiction of the court, and that that tract of land included within its boundaries the tract of land for which plaintiff is suing in the present action; that the plaintiff in this action was defendant in that action, and that the defendant in that action appeared and answered for the whole tract then in controversy; and that both actions were brought under chapter 32, Code of Civil Procedure (section 1133 et seq., C. L. A.).

Section 1136 of chapter 32 requires the defendant, in his answer, if he defends for a part of the tract for which the action is brought, to set forth in his answer what part he defends for. Section 1137 requires that the verdict shall set forth that the prevailing party is entitled to the possession of the property, or a part thereof, and the nature and duration of the estate. The defendant in that action (the plaintiff in this) defended for the whole of the tract in controversy, and the verdict of the jury and the judgment were for the whole of the tract in controversy in that action, including that for which this action is

brought, and therefore the subject-matter of this action was included in the subject-matter of the former action. In my judgment, the fact that in the first action more ground was in controversy than in the present action makes no difference as to the application of the doctrine of res judicata, as long as the right to the possession of the property in controversy was litigated, or was within the issues or might have been litigated in the first action.

Section 1146, C. L. A., being a part of chapter 32, provides that the judgment rendered in such action shall be conclusive as to the estate of such property and the right to the possession thereof, so far as determined, upon the party against whom the same is given and his privies, since the commencement of the action. In discussing the right of action provided by chapter 32 of the Code of Civil Procedure, which is taken bodily from the Oregon statutes, Judge Wolverton, for the Supreme Court of Oregon, in the case of Barrell v. Title Guaranty & Trust Co., 27 Or. 81, 39 P. 993, says that this action, thus provided for, is an action by which the title, estate and duration thereof to real property may be determined, as well as the right of possession. Then, after showing the distinction between the statutory action so provided for in the Oregon Code and by our Code, and the common-law action of ejectment, as to estoppel, and citing authority thereon, Judge Wolverton continues:

"So our statutes are amply sufficient to constitute a judgment thus obtained an estoppel or bar to a subsequent action for the same title, between the same parties, or their privies."

He then quotes with approval from Marshall v. Shafter, 32 Cal. 176, the following:

"It must be admitted by every one that the recovery operates as an estoppel to this extent: To preclude the losing party from denying that, as to him, the prevailing party was, at the time of the rendition of the judgment, entitled to the possession. It would seem necessarily to follow that, in order to avoid the estoppel, the losing party must show some other right of possession than that which he had when the estoppel was created. He is bound to show such other right, because his former claim of right was determined by the recovery."

A leading case (Cromwell v. Sac County, 94 U. S. 351, 24 L. Ed. 195), decided by the Supreme Court of the United States, thus declares the principle of res judicata:

"It should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim" or demand. "In the former case the judgment as rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, including parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * * The language * * * so often used, that a judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented, is strictly accurate. * * * But, where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered."

The claim or demand in the action at bar is the possession of a certain described tract of land at Ketchikan, and in the former action in which a judgment was rendered, pleaded as an estoppel, the claim or demand was for the possession of the same tract. Under the well-settled rule set forth above, the judgment pleaded, so far as the defense of the affirmative plea in plaintiff's reply is concerned, estops every ground which might have been offered in that action as a defense. If the plaintiff in this action might have offered the defense set forth in the affirmative reply in the former action, she is estopped from pleading it in this action. See Southern Pacific R. R. Co. v. U. S., 168 U. S. 50; 18 S. Ct. 18, 42 L. Ed. 355; New Orleans v. Citizens' Bank, 167 U. S. 371, 17 S. Ct. 905, 42 L. Ed. 202; Last Chance Mining Co. v. Tyler Min. Co., 157 U. S. 683, 15 S. Ct. 733, 39 L. Ed. 859; Johnson Steel Street Rail Co. v. Wharton, 152 U. S. 252, 14 S. Ct. 608, 38 L. Ed. 429.; Smith v. Kernochen, 7 How. 198, 12 L. Ed. 666; Campbell v. Rankin, 99 U. S. 261, 25 L. Ed. 435; 23 Cyc. 1070–1079, 1113–1119; 15 R. C. L. 855.

But counsel for plaintiff urges that there was fraud and collusion in obtaining the judgment as alleged in the reply, and that, as fraud vitiates everything, it would render the judgment void, and subject it to collateral attack. Waiving for the present the sufficiency of the allegation of fraud in the reply, and considering the question of fraud only as a means of collateral

attack on the judgment, I think the position of counsel is not warranted by the authorities. The elaborate and well-considered opinion of Judge Bean, in Morrill v. Morrill, 20 Or. 96, 25 P. 362, 11 L. R. A. 155, 23 Am. St. Rep. 95, is so pertinent to the contention of counsel that I quote largely from it.

Judge Bean first defines a collateral attack on a judgment, and then quotes with aproval paragraph 147j of the American & English Encyclopædia of Law, as follows:

"A collateral attack on a judgment is any proceeding which is not instituted for the express purpose of annulling, correcting, or modifying such decree or enjoining its execution."

The complaint in the case under discussion by Judge Bean, as in this, did not refer to the prior judgment or decree. The first mention of the prior judgment in that case, as in this, was when the defendant pleaded it as an estoppel, and the plaintiff, in that case, as in this, sought to avert the effect thereof by averring matters in the reply believed to have been sufficient to invalidate the judgment. In discussing this, Judge Bean says:

"This is undoubtedly a collateral attack. It is an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling, correcting, or modifying the decree or enjoining its execution. * * * The fact that the parties are the same, and that the plaintiff seeks to attack the decree by the allegation of the reply, cannot change the rule, or make the attack any the less a collateral one."

The learned judge then considers the allegation of fraud being urged in that case, as in this, that the decree was obtained through fraud. He says:

"It is a general rule, at common law, that parties and privies to a judgment may not attack it * * .* for fraud. After a party has been duly served with process, it is his duty to see that such a judgment is not obtained against him, and, if it is, he must take some proper proceedings to have it annulled. As long as it remains in full force and effect, the parties cannot treat it as invalid, unless such invalidity appears upon the face of the judgment. It is true fraud vitiates every transaction into which it enters, even a judgment; but such fraud must be made to appear in some appropriate proceeding known to the law. The statute points out ample methods by which a party may be relieved * * * therefrom; and beyond the methods provided by statute, courts possess inherent powers, as has been said, 'to an almost unlimited extent, to redress wrongs by modifying or setting aside judgments obtained by fraud or mistake.' These methods, however, must be resorted to. They give no countenance to the

idea that a judgment wrongfully obtained may be completely ignored, and the rights of the parties again inquired into in a collateral proceeding. Freeman on Judgments, p. 334 [and numerous authorities]. From these, and many other authorities that could be cited, we take the law to be that a judgment of a court of this state, having jurisdiction over the subject-matter and the parties, cannot be questioned collaterally for fraud aliunde," outside of "the record by the parties or privies." Cope [Cocke, use of Commercial Bank] v. Halsey, 41 U. S. (16 Pet.) 71 [10 L. Ed. 891]."

Mr. Bigelow, in his work on Estoppel (6th Ed., p. 242), discussing to what extent a judgment may be collaterally attacked by fraud, thus states the rule:

"The rule, aptly stated, so far as there is such a rule, appears to be that a judgment *obtained by fraud* may be impeached, and not that a judgment may be impeached *for* fraud. The true question is the meaning of the term 'fraud' within that rule. Fraud appears to mean endeavor to alter rights by deception touching motives, or by some circumvention not touching motives. The first-named wrong in the definition, 'deception,' implies some transaction like an agreement between the wrongdoer and the party wronged; the second, 'circumvention,' some transaction between the wrongdoer and a third person, as in the case of a conveyance by a debtor in fraud of his creditors. Where the wrongdoing consists only in bringing forward false evidence, or when there is only overreaching, there is no fraud, within the definition or within the authorities; but where there is any agreement at the time between the parties, attended with misrepresentation scienter, or other fraud in the way of deception against the rights in law of the party complaining of the judgment, or where there is any similar transaction at the time between the other parties to a case in the way of circumvention against such rights, there, it is apprehended, is fraud such as may justify an impeachment of the judgment collaterally, even upon the footing that the judgment is only voidable. * * *

"In regard to the third question proposed, the circumstances under which impeachment collaterally is to be allowed, it is to be said that so far as the question is an open one—and it may be in some states—it may well be doubted whether the judgment, while it may still be made the subject of a proceeding to destroy it, should be collaterally impeachable on the grounds of fraud, not touching the jurisdiction of the court."

In this case the facts pleaded in the reply do not show that there was any collusion whereby the judgment was obtained by fraud, but rather that the fraud refers to a conspiracy to impose upon the rights of the Indians, and no fraud in obtaining the judgment itself, and therefore it does not even come within the rule laid down by Mr. Bishop. The views expressed, how-

ever, by Judge Bean, above set forth, so clearly fit this case, that I can add nothing to their force.

This court is a court of general jurisdiction, authorized to try the title to and right to the possession of lands in the territory of Alaska. It therefore had jurisdiction of the subject-matter of the former action. This the plaintiff practically admits by bringing this action, based on the same subject-matter. If the court had no jurisdiction of the subject-matter of the former action, it would be without jurisdiction to afford redress in this. The jurisdiction of a tribunal does not depend upon the actual facts alleged, but upon the authority to determine the existence or nonexistence of such facts, and to render judgment fairly according to its finding; if such authority exists, then the tribunal has jurisdiction of the subject-matter. Jurisdiction is the power, lawfully conferred, to deal with the subject involved in the action. If the court had jurisdiction of the person, and had authority to pass upon the general abstract question as to the right of possession or title to the property in question, and to determine and adjudge whether the particular facts presented called for the exercise of that authority, then its judgment must be conclusive as against a collateral attack, however erroneous. Bailey on Jurisdiction, §§ 2, 3, 4; White v. Merritt, 7 N. Y. 352, 57 Am. Dec. 527; Equitable Trust Co. v. Denver & R. G. R. R. Co. (D. C.) 269 F. 989; Pierce v. National Bank (C. C. A.) 268 F. 487; Graff Furnace Co. v. Scranton Coal Co. (C. C. A.) 266 F. 798; Union Steam Pump Co. v. Manlon Gualin Mfg. Co. (D. C.) 272 F. 773.

Therefore I am satisfied that under the authorities the defendant cannot attack a judgment collaterally for fraud, where fraud does not appear on the face of the record of the proceedings itself, unless the fraud was committed in obtaining the judgment itself.

But the plaintiff urges that the court was rather without jurisdiction to render the judgment in the former action, for the reason that the defendant there, the plaintiff in this action, was an Indian, a ward of the United States, and that the land had been reserved to her use and benefit by the Secretary of the Interior by virtue of an act of Congress, and that the judgment rendered in the former action was in direct conflict with the laws of the United States, and for that reason void, and therefore subject to collateral attack. In support of this contention,

the case of Goodrum v. Buffalo, 162 F. 817–826, decided by
the Circuit Court of Appeals of the Eighth Circuit, is cited. I
have carefully examined that case, and find the facts to be
radically different. The judgment in that case, sought to be
pleaded as an estoppel, was rendered upon an agreed statement
of facts, submitted without action under a local statute to the
United States Court of the Indian Territory. The Circuit Court
of Appeals held first that, because of the lack of an affidavit
which was essential to the jurisdiction of the court rendering
the judgment, the judgment so rendered was coram non judice.
The court further held that an Indian was not a person sui juris,
and not competent to consent to the alienation of the land, in
direct conflict with the act of Congress granting the same to him.
In other words, the Circuit Court of Appeals held that the
United States Court for the Indian Territory had no jurisdiction
of the case, because of the lack of an essential affidavit (this
appearing on the fact of the proceedings), and that it had no
jurisdiction of the person of the Indian, because he was not
competent to voluntarily submit himself to the jurisdiction of
the court.

It further appears that the judgment sought to be pleaded
as an estoppel bore on its face the stamp of its invalidity, in
that it said that the lands were lands which were allotted to
the Indians under the Act of March 2, 1895 (28 Stat. 907), that
the plaintiff was an Indian of the Quapaw Tribe, and that un-
der the said act the lands were inalienable; that the judgment
was rendered on an agreed statement of facts provided by stat-
ute, and that the Indian had not complied with this statute.
The Circuit Court of Appeals, in affirming the judgment of the
Court of Appeals of the Indian Territory, which first decided
the question, says:

"It is transparent on the face of the proceedings in the United
States Court, * * * relied upon by Goodrum as an estoppel, that
it was not an honest proceeding."

The case falls squarely within the rule laid down by Mr. Bige-
low, in his work on Estoppel, above cited, that the judgment in
the original action, sought to be pleaded as an estoppel, was
obtained by fraud.

In the case at bar, nothing of the kind appears on the face
of the judgment. The defendant, plaintiff in this action, was
regularly served with a summons, appeared, and answered in

court, setting up title to the premises in controversy. There was a trial on the issue thus made, a verdict and judgment by the court, by a court having jurisdiction of the person and of the subject-matter of the action.

The cases of Bigelow v. Forrest, 9 Wall. 339, 19 L. Ed. 696, and Day v. Micou, 18 Wall. 156, 21 L. Ed. 860, are also cited by counsel in support of his position. These cases are also cases wherein a plea of estoppel by judgment was pleaded by the defendant. The judgment pleaded as an estoppel arose under the Confiscation Act of Congress of July 17, 1862, authorizing the court to enter a judgment of forfeiture of the estate of one convicted of treason during the natural life of the offender, and no more. In the original judgment, the court forfeited all the estate of the person attainted. The heirs in the case of Bigelow v. Forrest and the mortgagee in the case of Day v. Micou sought to establish their rights to the estate after the natural life of the person attainted. The judgment of forfeiture was pleaded as an estoppel. The judgment so pleaded showed on its face that the courts, in adjudging a forfeiture, acted in a special proceeding authorized by Congress in rem against the estate and exceeded the authority given by the statute. It must be conceded that, where a judgment in rem is pleaded as an estoppel, it may be collaterally attacked.

Judge Woolley, for the Circuit Court of Appeals of the Third Circuit, in the case of Throckmorton v. Hickman, laid down the rule in these words:

"It is an established rule that the verity of the record and the validity of a judgment of a superior court of general jurisdiction cannot be collaterally impeached. A distinction in this rule has been observed between the want of jurisdiction and the irregular or erroneous exercise of it. Where it appears by the record itself that the judgment of such a court has been rendered without jurisdiction either of the subject-matter or of the person of the defendant, or in actions purely or quasi in rem, of his property, such judgment may, in collateral proceedings, be disregarded and treated as a nullity. The expression of this rule, both in its origin and in its evolution from attack upon a judgment by matter intrinsic of the record to attack by matter extrinsic, is found in the familiar case of Galpin v. Page, 18 Wall. 350, 21 L. Ed. 959. * * * The line which distinguishes between the want of jurisdiction and the irregular or erroneous exercise of it, the Supreme Court said, in Voorhees v. Bank [10 Pet. 449, 9 L. Ed. 193], supra, 'is very definite,' and is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate court, or may be declared a nullity collaterally, when it is

offered in evidence in an action concerning the matter adjudicated, or purporting to have been so. In the one case, it is a record importing absolute verity; in the other, mere waste paper." Throckmorton v. Hickman, 279 F. 196.

I am clearly of the opinion that the record of the judgment in this case imports absolute verity, and cannot be impeached with matters outside of the record. As was said by the Supreme Court in Voorhees v. Bank, 10 Pet. 477 (9 L. Ed. 193):

"When the proceedings are collaterally drawn in question, and it appears on the face of them that the subject-matter was within the jurisdiction of the court, they are voidable only. The errors and irregularities, if any exist, are to be corrected by some direct proceeding, either before the same court that set them aside, or in an appellate court."

The demurrer will therefore be sustained.