M'Instry *against* Tanner.

NEWYORK,
May, 1812.

M'Instry
v.
Tanner.

IN error, on *certiorari*, from a justice's court.

*Tanner* brought an action of *trover* against *M'Instry* for a chest of tools. The cause was tried by a jury. In the autumn of 1807, the chest of tools, which were the property of one *Andross*, were sold at public auction, under an execution, and purchased by one *Bartholomew*, who, soon afterwards, sold them to *Tanner* for nine dollars, which was less than their value. *Tanner* lent and delivered them to *Andross*, who continued in the possession of them, until they were taken by virtue of an execution in favour of *M'Instry* against *Andross*, in the spring of 1809, and sold.

It appeared that the goods were purchased by *Tanner* at the request of *Andross*, and were delivered to him to use, without any stipulated consideration or any limitation of time. There was an unsettled account between them. *Andross*, who was a witness, testified that the goods were not sold to him by *Tanner*, nor was there any secret or implied trust between them. A witness for the defendant below stated, that *Andross* had said the chest of tools were his property.

The jury found a verdict for the plaintiff, on which the justice gave judgment. The plaintiff in error made two objections; 1. That the justice was a minister of the gospel; 2. That the verdict was against evidence.

The justice, in his return, stated, that he was not a priest, or minister of the gospel.

*Per Curiam.* There is no ground for the objection that the proceedings before the justice were *coram non judice*, because he was a priest, or minister of the gospel. It was not true in point of fact; for the allegation is expressly contradicted in the return, and if it were not so, it might well be questioned whether the court could take notice of such an objection, in this way, since we are to intend that the justice acted under a regular commission; and he has not been put to answer for an unconstitutional exercise of power. The acts of officers *de facto*, are often valid, as far as they concern the public and the rights of third persons. The only real question in the case is, whether the law arising upon the facts would warrant the verdict. There were circumstances

*On the return to a certiorari, the court will not admit the objection that the justice was a priest, or minister of the gospel, and that the proceedings were, therefore, coram non judice, but will presume that the justice acted under a regular commission. The acts of officers de facto, are valid, as respects the public and the rights of third persons. Where the parties do not stand in the relation of debtor and creditor, and the object is not to defeat creditors, goods may be left in the hands of the original owner, without its being considered fraudulent.*

in this case from which a jury might have inferred a fraudulent collusion between *Tanner* and *Andross*, to cover this property; but the jury have drawn a different conclusion, and the case is not so strong as to warrant an interference with their verdict. There are cases in which goods may be safely left with the original owner, as was intimated in the case of *Putnam* v. *Wiley*, (8 *Johns. Rep.* 435.) and as was decided in the case of *Kidd* v. *Rawlinson.* (2 *B. & P.* 59.) That decision seems to confine the case to instances in which the parties do not stand in the relation of debtor and creditor; and where, of course, there could not have been any object to defeat other creditors, and where the goods were lent for a temporary, benevolent and honest purpose. The jury must have considered this case as coming within that principle; and, upon the whole, the judgment must be affirmed.

Judgment affirmed.