FLAVIUS A. BROWN, TREASURER, *vs.* JOHN O'CONNELL.

It is provided by sec. 1, art. 5, of the constitution of this state, that the judicial power of the state shall be vested in a Supreme Court, a Superior Court, and such inferior courts as the General Assembly shall from time to time establish ; and by sec. 3 that the judges of all these courts shall be appointed by the General Assembly in such manner as shall be by law prescribed. The General· Assembly passed an act establishing a police court in the city of Hartford, and providing for the appointment of a judge of the court by the common council of the city. Held that under the constitution the judge could be appointed only by the General Assembly, and that the appointment by the common council was void.

But held that a judge of the police court appointed by the common council under the act in question was a judge *de facto,* and that a recognizance entered into before him in the police court for the appearance of a prisoner was valid and binding. [One judge dissenting.]

To constitute an officer *de facto* it is not necessary that he have color of appointment from some power having actual authority to make the appointment, but it is sufficient that he has had appointment from some power having color of authority to make it. [One judge dissenting.]

The provision of the constitution that the judges "shall be appointed by the General Assembly *in such manner as shall by law be prescribed,*" has reference only to the mode of doing the act prescribed, and does not authorize the delegation of the power of appointment to any other body.

Where a court is established by act of the General Assembly, its judicial power is not conferred by the act, but vests by force of the constitution.

At the time of the adoption of the constitution the city of Hartford by its charter had the right to hold city courts and appoint their judges, and the constitution provided that "the rights of all corporations should remain unaffected except so far as restricted by the constitution." Held that no rights or franchises were contemplated by that provision except such as were then existing, and that whatever might have been the case if the criminal jurisdiction conferred upon the police court had been given to the then existing city court, yet the right to have the police court as a new and distinct judicial tribunal, and the right to appoint its judges, could not be regarded as within any franchise then possessed by the city.

DEBT on a recognizance entered into by the defendant before the police court of the city of Hartford, brought by the plaintiff as treasurer of the city of Hartford. The suit was brought to the Superior Court in Hartford county.

The declaration alleged the establishment of the police court of the city of Hartford and its criminal jurisdiction, and that a bench warrant was issued from the court on the

4th day of February, 1869, by Frederick Eberle, clerk of the court, for the arrest of John O'Connell, Jr., upon a complaint for an aggravated assault and breach of the peace; that the said John O'Connell, Jr., on the same day was arrested and brought before the court, and that the court, having first required bonds to the amount of $200, adjourned the hearing of the case until the 8th day of February, 1869; and that thereupon the said John O'Connell, Jr., as principal, and the said John O'Connell, as surety, appeared before the court and acknowledged themselves to be jointly and severally bound to the treasurer of the city of Hartford in the sum of $200 for the appearance of the said John O'Connell, Jr., before the court on the 8th day of February, 1869, to answer to the charges of the complaint upon which the bench warrant was issued and abide the order of the court thereon. The declaration then proceeded to allege a forfeiture of the bond, the non-payment of the amount of the same, and the right of action of the plaintiff for the recovery of the same.

The defendant filed the following plea:

The defendant in court defends, pleads and says, that the plaintiff ought not to have or maintain his said action, because he says that the said charter of the city of Hartford, by the provisions of which the said city police court is established, as in said declaration is set forth, provides that the judge of said city police court shall be appointed by a major vote of the entire court of common council of said city; and that so, and not otherwise was in fact appointed the pretended judge of said court, who appointed the said Frederick Eberle the pretended clerk of said court, and by whose direction the said supposed bench warrant was issued, and before whom the said supposed bond of recognizance was taken and the other proceedings had, mentioned in said declaration. That the said police court is an inferior court within the true meaning and intent of the constitution of this state, and the judge thereof should have been appointed by the General Assembly of this state, as required by the provisions of said constitution, and said charter in so far as it authorized the appointment as aforesaid of the judge of said police court,

and gave such judge so appointed as aforesaid judicial power and authority, was and is unconstitutional and void.  And the pretended judge of said court so appointed as aforesaid had no constitutional power or authority to hold said court, or exercise any judicial power or authority in the premises, and the issuing of said bench warrant, and the taking of said bond of recognizance, and all the other proceedings had in the premises, mentioned in said declaration, were unauthorized, unconstitutional, and void.  And this the defendant is ready to verify, wherefore he prays judgment, &c.

Issue was closed to the court upon this plea and the following facts were found by the court:—

By the 6th section of the charter of the city of Hartford, accepted September 3d, 1859, it is provided that " there shall be a court of common council of said city, which shall consist of two separate branches, a board of aldermen and the common council board."  By the 12th section of the charter it is provided that the city court of the city " shall continue to be composed of a recorder, who shall be chief judge, and two associate judges," and that they " shall be appointed by a major vote of the entire court of common council, in joint convention assembled, at such time as the by-laws or ordinances of said city shall prescribe."  And by sections 18 and 21 of the charter, it is provided as follows:

" Sec. 18.    There shall continue to be a city police court established and holden within and for said city, the judge of which shall be appointed in the same manner as the recorder of said city, and hold his office for the term of one year and until his successor shall be chosen and sworn.  He shall continue to have and exercise the jurisdiction and powers relative to and over criminal cases (including cases where sureties of the person and good behavior are required,) arising within the incorporated limits of the city and on Connecticut river opposite said city, now vested by law in justices of the peace within towns ; which jurisdiction and powers shall continue to be exclusive.   *   *   *   Said court shall have authority, subject to the provisions of this act, to hear and determine charges for crimes and misdemeanors committed within the

limits of the city of Hartford, the punishment of which as prescribed by law does not exceed a fine of two hundred dollars, or six months imprisonment in a common jail, workhouse, or city penitentiary, or such fine and imprisonment both ; and in all such cases said court may proceed to trial, render final judgment thereon, and grant a warrant for the execution thereof, according to law. But in all cases the person convicted may appeal from the judgment of said police court to the Superior Court next to be holden in the county of Hartford, &c. * * * Said court shall have and appoint a clerk who shall keep a record of the same, and certify its proceedings, whose duties, compensation, bond, (including his duties relative to the payment of prosecuting officers,) shall be regulated by city ordinance."

" Sec. 21. Before entering upon the trial of any criminal cause, the said police court may adjourn the hearing or trial thereof from time to time, not exceeding fifteen days, unless said court, upon good cause shown, may deem a longer time necessary for the purpose of procuring material testimony, which time shall not exceed ninety days. And said court, if the offence charged shall be bailable, and good and sufficient bail is at the time of any adjournment, or during the period of adjournment, offered, shall take the same, conditioned that the person charged shall appear before said court at the day to which the hearing or trial is adjourned, and then and at all times thereafter abide the final order or judgment of said court. If the case is within the final jurisdiction of said police court, the bond of recognizance shall be payable to the city treasurer, otherwise to the county or state treasurer, as the nature of the offence shall require."

At a meeting of the common council in joint convention legally held on the 20th day of April, 1868, Monroe E. Merrill was appointed judge of the police court for the term of one year and until his successor should be appointed and qualified. Judge Merrill took the oath of office and entered upon the discharge of the duties of the office. He immediately after appointed Frederick Eberle, clerk of the court, who also took the oath and entered upon the duties of the office. From the

time of their appointment until after the recognizance in question was taken Judge Merrill acted as judge of the court, and Mr. Eberle as clerk of the court, under these appointments, and were so acting at the time the recognizance in question was taken.

Upon these facts and upon the pleadings the case was reserved for the advice of this court.

*Hamersley* and *Buck*, for the plaintiff.

1.   Presumptions are always in favor of the constitutionality of an act of the General Assembly; the legislature is presumed to have judged correctly of its constitutional powers, and if any doubt exists, the benefit of that doubt should be given to the law.   Before the court will deem it their duty to declare an act unconstitutional, a case must be presented in which there can be no rational doubt.   *Hartford Bridge Co.* v. *Union Ferry Co.*, 29 Conn., 210 ; *Ex-parte M' Collum*, 1 Cowen, 550, 564.   The construction of the constitution by the legislature, as given in its acts, ought to have great weight, and ought not to be overruled unless clearly and manifestly erroneous.   *Kendall* v. *Kingston*, 5 Mass., 534 ; *Barnes* v. *First Parish in Falmouth*, 6 id., 417.   *Portland Bank* v. *Apthorp*, 12 id., 257 ; *Adams* v. *Howe*, 14 id., 345.

2.   The act which created the police court of the city of Hartford was passed in 1851.   It has been in the exercise of its authority ever since without objection on the part of any one.   The legislature has, from time to time, granted this power to the several cities.   A similar court was established in Waterbury in the year 1853, in Bridgeport in 1836.   Criminal jurisdiction has been given to the city court of New Haven, a police court has been established in Norwich, and the fact that these courts have been acquiesced in by the people, and their authority never questioned for a long period, should have great weight in determining this question.   *Freeman* v. *Selectmen of New Haven*, 34 Conn., 414.   A contemporaneous construction of the constitution, practiced under and acquiesced in for a series of years, fixes the construction, and the courts will not control it.   *Stuart* v. *Laird*, 1 Cranch, 299.

3.   The police court of the city of Hartford is not an "inferior court" within the meaning of the constitution, and the several city courts now in existence and operation in the different cities of the state, whether of civil or criminal jurisdiction, do not form any part of the "judicial power of *the State*," within the meaning of that instrument.   This brings us to the discussion of what is meant by the provisions found in Article V of the constitution.   Section 1st provides that "the judicial power *of the State* shall be vested in a Supreme Court of Errors, a Superior Court, and such inferior courts as the General Assembly shall from time to time ordain and establish."   And in section 3d it is provided that the aforesaid judicial power *of the State*, to wit:  "the Judges of the  Supreme Court of Errors, of the  superior and inferior courts, and all justices of the peace, shall be appointed by the General Assembly."   At the adoption of the present constitution there were five cities (municipal corporations) in existence in the state, and each one enjoyed the franchise of electing the judges of its own courts, these courts having unlimited jurisdiction as to amount.   And these cities had possessed and enjoyed this franchise for a series of years prior to the adoption of the constitution.   This *judicial franchise*, existing in all of the cities of the state at the time of the formation of the constitution, was protected by that instrument in the following terms:  "The rights and duties of all corporations *shall remain* as if this constitution had not been adopted, with the exception of such regulations and restrictions as are contained in this constitution."   Const., Article 10, Sec. 3.   The city judges, so called, that were in office in the city of Hartford at the adoption of the constitution, remained in office afterwards, recognized and protected by this provision.   And the next clause provides for the continuation in office of all judicial and civil officers then in office by appointment of the General Assembly.   It appears, therefore, that the rights of all corporations should remain, including the right on the part of certain municipal corporations to elect judges, and also that the judicial and civil officers, the appointees of the General Assembly, should be protected.

There was then a judicial power of the state, and also a judicial power of the cities, in existence as two separate "judicial powers" at the adoption of the constitution. If, therefore, this separate judicial power existed in the cities, the framers of the constitution could have had no reference to city courts of any kind when they declared that the judicial power *of the State* should consist of the Supreme and Superior Courts, and such inferior courts as should be established. The city courts were in existence, not as the judicial power of the state. They were not Supreme or Superior Courts, and they were not inferior courts *to be ordained*. The same reasoning should also be applied to legislative powers. The constitutional provision on this subject is as follows: "The legislative power *of this State* shall be vested in two distinct houses or branches, the one to be styled the Senate and the other the House of Representatives, and both together the General Assembly." Const., Article III., Sec. 1. But these five cities had the right to legislate to a large extent as to the property of its citizens, and to regulate their own internal affairs in their own way. This was a *legislative franchise* which they owned and enjoyed, and which was recognized and protected by the Constitution. The legislative power *of the cities* formed no part of the legislative power *of the State*. The legislature has from time to time created new cities with ample legislative powers, and scarcely a year passes but that some new legislative power is granted to them. If this power was a part of the legislative power of the state then the General Assembly would have no right to delegate it to the cities. But the right of the legislature to grant this power to the cities has always been exercised and never questioned. The legislature has certainly the same right to allow cities to elect their own judges, police or civil, as it has to allow them to legislate concerning their internal affairs. Can it be claimed that the General Assembly has no power to charter a new city with power to legislate for itself through its common council? What right has the court of common council of the city of Hartford to legislate for 40,000 inhabitants? Why are not all of its ordinances utterly void? Simply

because this legislative power is not the "legislative power" of the State," which is referred to in the constitution. It is the "legislative power of the cities," which was in existence when the constitution was formed, and was one of the "rights of corporations" protected by that instrument. The constitution is not a grant of power but a limitation. The legislature is the sovereign power, limited only by the constitution. *Booth* v. *Town of Woodbury*, 32 Conn., 118. If there be no limitation in the constitution on the legislature as to its right to grant charters to cities, it may exercise that right and may grant such judicial and legislative powers as may be necessary for the existence and good government of these different municipalities. *Sill* v. *Village of Corning*, 15 N. York, 297 ; *Starr* v. *Pease*, 8 Conn., 547. The legislature has exercised the right of granting charters to cities since the constitution as before, and this right has never been questioned. It is a part of its own sovereign power which it is not forbidden to delegate. If it be true that city judges do not form a part of the judicial power of the state, and that the legislature has the power to grant charters to cities, it can grant to each city the power to elect its own city judges, having civil or criminal jurisdiction, and with this power may grant also the power to each city to legislate for itself, it not being a part of the legislative power of *the State* but of *the cities.* *Schroder* v. *City Council of Charleston*, 2 So. Car. Const. Reps., 726 ; *Eggleston* v. *City of Charleston*, 1 id., 45 ; *Respublica* v. *Dallas*, 3 Yeates, 316 ; *State* v. *Helfrid*, 2 Nott & McC., 233. The right to grant the original charter implies the right to amend it, and the legislature may amend by enlarging the power of a city, and allowing it to elect a judge of a court of criminal jurisdiction; it already having the right to elect judges of its civil court.

4. The judge of the police court of the city of Hartford was at least a judge *de facto.* His right cannot be attacked collaterally. It should be by writ of *quo warranto. Plymouth* v. *Painter*, 17 Conn., 589 ; *Douglass* v. *Wickwire*, 19 id., 489 ; *Morris* v. *The People*, 3 Denio, 381 ; *Wilcox* v.

*Smith,* 5 Wend., 231; *State ex rel. Gordon* v. *Young,* Superior Court, New London County, November Term, 1859, by *Sanford, J.*

*Welles* and *McManus,* for the defendant.

The bond of recognizance for the appearance of the prisoner in the police court, upon which this suit is brought, derives all its validity from the authority of the judge of that court to take such a bond or to authorize it to be taken. If he had no such authority the bond is null and void. He had no such authority because he was not a judge of that court, either *de facto* or *de jure,* and had no right to exercise the judicial office. *Hall* v. *Marks,* 34 Ill., 358.

1. He was not a judge *de facto.* An officer *de facto* is defined to be one who " acts under color of an election or an appointment *by the only body which has the power to make it.*" *Hinman, J.,* in *Douglass* v. *Wickwire,* 19 Conn., 492; *State* v. *Brennan's Liquors,* 25 Conn., 283. The judge in question acted under an appointment by the common council of the city of Hartford, and that alone. Was that a body which " had the power to make" such an appointment ? Such a power is professedly given by the city charter, and is the only authority counted upon in the declaration. But the charter affords no sanction for the exercise of such an authority, as it is, in this particular, in conflict with the constitution of the state. Art. 5, sec. 3, of the constitution is as follows :—" The judges of the Supreme Court of Errors, of the Superior and *inferior* courts, and all justices of the peace, *shall be appointed by the General Assembly* in such manner as shall by law be prescribed. The judges of the Supreme Court and of the Superior Court shall hold their offices during good behavior. *All other judges shall be appointed annually.*" The judge of the police court of Hartford is a judge of an " *inferior court,*" within the meaning of this section, and should be appointed annually by the General Assembly. Both these propositions must be true or neither of them. Does the term " inferior courts," as here used, mean all inferior courts, or some only, and if some, what ones ? This question is answered by the

constitution itself in section 1st of the same article, as follows: "The judicial power of the state shall be vested in a Supreme Court of Errors, a Superior Court, and *such inferior courts as the General Assembly shall from time to time ordain and establish* ; the powers and jurisdiction of which courts shall be defined by law." In other words, all judicial tribunals of a grade lower than superior courts (except justice courts) are inferior courts within the meaning of the constitution; provided, 1st, any of "the judicial power of the state is vested" in them; and 2d, they are "ordained and established by the General Assembly"; and 3d, their "powers and jurisdiction are defined by law." This definition was intended to be exhaustive and to dispose of the whole judicial power of the state. 1 Kent Com., 290 ; 2 Story on Const., §§ 1592, 1593. In the police court of Hartford these three conditions are all satisfied.—1st. It is "vested with judicial power," which would otherwise be exercised in part by the Superior Court for Hartford County, and in part by the justices of the peace of Hartford. It was "ordained and established by the General Assembly ;" and 3d, its "powers and jurisdiction are defined by law." Charter, secs. 18, 19, 21 ; Gen. Statutes, p. 308, sec. 46, and p. 705, sec. 44. The charter "creates an office and appoints an incumbent." *Clapp* v. *City of Hartford*, 35 Conn., 223; *State* v. *Clegg*, 27 id., 593 ; *People* v. *Kane*, 23 Wend., 414 ; *Tesh* v. *The Commonwealth*, 4 Dana, 522 ; *Opinion of the Judges*, 3 Cush., 584 ; *Attorney General* v. *McDonald*, 3 Wis., 805 ; *The People* v. *Maynard*, 14 Ill., 419 ; *Kempe's Lessee* v. *Kennedy*, 5 Cranch, 185 ; *Baker* v. *Steamboat Milwaukee*, 14 Iowa, 214 ; *Nugent* v. *The State*, 18 Ala., 521. Judges of probate were included in the term "inferior courts," and are now elected by the people, by virtue of a special amendment of the section first quoted, adopted in 1850 ; also justices of the peace. Amendments IX and X. So that it seems manifestly to have been the intention of the framers of the constitution to provide for the appointment of *all* judicial officers by the General Assembly, from judges of the Supreme Court down to justices of the peace. The power to ordain and establish a court has annexed to it the

duty to appoint the incumbent. The duty is joined to the
power, and. is co-extensive with it, and the two cannot be
separated without doing violence to the plain provisions of
both the letter and the spirit of our fundamental law. *War-
ner* v. *The People,* 2 Denio, 272. The practice of the legis-
lature in appointing judges of similar courts in other cities
and boroughs, is in recognition and fulfillment of this duty.
No question of contemporary construction can arise here, for
the reason that this is no case for construction. There is no
such ambiguity in the language of the constitution as calls
for an explanation and construction by this court. The con-
stitution is its own interpreter. 1 Story on Const., § 451;
*State* v. *Maine,* 27 Conn., 647; 1 Swift Dig., 12; *Gibbons* v.
*Ogden,* 9 Wheat., 187; *Sadler* v. *Langham,* 34 Ala., 311,
321, 334; *Bourland* v. *Hildreth,* 26 Cal., 180; Sedgw. Stat.
and Const. Law, 260. " Contemporary construction is re-
sorted to to illustrate and confirm the text. It can never
*abrogate* the text; it can never fritter away its obvious sense;
it can never narrow down its true limitations; it can never
enlarge its natural boundaries." · 1 Story on Const., § 407.
The argument *ab inconvenienti* does not apply to the construc-
tion of the constitution. 1 Story on Const., § 426; Sedgw. Stat.
and Const. Law, 308, 312; *The People* v. *Merrill,* 21 Wend.,
563; *Newell* v. *The People,* 3 Seld., 9, 109; *State* v. *Maine,*
27 Conn., 647. The appointment of the judge must be the
act of the General Assembly. The language in the section
quoted is imperative. The expressions are " *shall be appointed
by the General Assembly,*" and " *shall be appointed annually.*"
The General Assembly like the other departments of govern-
ment exercises only delegated authority; and its power to
appoint judges of the courts, cannot be delegated by it to
any other body or to the people. *Cincinnati & Zanesville
R. R. Co.* v *Commissioners of Clinton County,* 1 Ohio S. R.,
77, 87. A constitutional limitation on legislative power can
not be directory. This is especially true in our own state.
Our constitution is a limitation of legislative power. *Starr*
v. *Pease,* 8 Conn., 541; *Pratt* v. *Allen,* 13 id., 119; *Booth*
v. *Woodbury,* 32 id., 118; *Brown* v. *Buzan,* 24 Ind., 194.

The only discretion allowed to the General Assembly, is to "prescribe by law the *manner*" of exercising the appointing power conferred upon them ; which is by statute prescribed to be by "vote and resolution." Gen. Statutes, p. 242, secs. 115, 117. And their appointments must be evidenced by commissions from the governor, under the seal of the state. Const., art. 4, sec. 11. In its application to the appointment of the judge in question, the language of the provision quoted may read thus : " The judge of the police court of the city of Hartford shall be annually appointed by the General Assembly." We claim that to be the exact and unequivocal *purport* of the language of the constitution, and therefore it may be taken as the very language itself for the purposes of this case.—The police court of Hartford was first established by *public act* of the General Assembly, approved July 2, 1851, and adopted in city meeting Oct. 22, 1851, when it took effect. This was *thirty-three years after* the adoption of the constitution. So that no question can arise as to vested rights being impaired or disturbed by that instrument. *Dartmouth College* v. *Woodward*, 4 Wheat., 659, 661 ; *Town of Marietta* v. *Fearing*, 4 Ohio, 427 ; *The People* v. *Morris*, 13 Wend., 325 ; *Bradford* v. *Cary*, 5 Greenl., 342.—As the act was in conflict with the constitution as to the appointment of the judge, it was and is null and void. *Marbury* v. *Madison*, 1 Cranch, 176 ; *People* v. *Maynard*, 14, Ill., 419 ; *People* v. *Kane*, 23 Wend., 414.—The effect of the constitution upon existing rights, offices and laws, is defined by that instrument itself as follows : " The rights and duties of all corporations shall remain as if this constitution had not been adopted, *with the exception* of such regulations and restrictions as are contained in this constitution." " All laws not contrary to, or inconsistent with the provisions of this constitution, shall remain in force until they shall expire by their own limitation, or shall be altered or repealed by the General Assembly." Art. 10, sec. 3. The implication is that such "rights and duties of all corporations" as *are* in conflict with " such regulations and restrictions as are contained in this constitution" shall *not* remain ; and that " *all laws* contrary to or incon-

sistent with the provisions of this constitution" shall *not* remain in force. If this be the case with all such " rights, duties and *laws*," existing *at the time* of the adoption of the constitution, *a fortiori* must it be true of any such law passed *after* the adoption of that instrument.

2. The judge in question is not a judge *de jure*. If the law under which he exercises his power is null and void, he falls with the law. His pretended judicial acts are therefore invalid even as regards the public or third persons, and may be *indirectly or collaterally called in question* in a proceeding to which he is not a party, like the present. " The acts of·a mere usurper of an office, without any color of title, are undoubtedly wholly void, both as to individuals and the public." STORRS, J., in *Plymouth* v. *Painter*, 17 Conn., 588 ; 16 Viner Ab., " Officer and Office," G. 4. The common council of Hartford have no more power to make the appointment of judge of the police court, under the constitution, than they have to appoint the governor of the state or the judges of the Supreme Court; they could not therefore bestow upon such incumbent appointed by them even the outward signs and symbols of the office. So that such judge can not be said to hold office *by color of title. The People* v. *Carter*, 29 Barb., 208. " The principle that the official acts of officers *de facto* are valid, as between third persons, cannot be applied properly to an unconstitutional exercise of power by an officer *de jure*, who claims to exercise that power by virtue of such office." *The People* v. *White*, 24 Wend., 539, 540. Such an officer is one neither *de jure* nor *de facto. Frame* v. *Trebble*, 1 J. J. Marsh., 205 ; *Hildreth's Heirs* v. *McIntire's Devisee*, id., 206.

3. If we are right, the judicial power which was attempted to be vested in the judge of the police court of Hartford by the General Assembly, was not so vested for want of legislative power so to do. The General Assembly had an undoubted right to ordain and establish *a* police court for the city of Hartford, but not *the* police court attempted in this case. The *offices* of judge and clerk of that court never had a constitutional existence. They were not offices *de jure*, and an office

*de facto* is a solecism under a written constitution. *Hildreth's Heirs* v. *McIntire's Devisee,* supra.

BUTLER, J. There are two distinct questions raised in this case. The first is, whether the judge of the police court of the city of Hartford was judge of that court *de jure,* when the proceedings in question were had, and if not, then second, whether he was so a judge *de facto* that the proceedings are valid.

The first question involves the construction of Art. 5 of the constitution of this state, and the constitutionality of the law authorizing the common council of the city of Hartford to appoint a judge for the police court of that city.

Sec. 1 of that article provides that " the judicial power of the state shall be vested in a Supreme Court of Errors, a Superior Court, and such inferior courts as the General Assembly shall from time to time ordain and establish." Sec. 3 of the same article provides that " the judges of the Supreme Court of Errors and of the superior and inferior courts and all justices of the peace shall be appointed by the General Assembly in such manner as shall by law be prescribed." And it further provides that " the judges of the Supreme Court and of the Superior Court shall hold their offices during the term for which they were elected, and all other judges &c. shall be appointed annually."

In the opinion given by the judges of this court in regard to the constitutionality of the soldiers' voting act, (30 Conn., 593,) we held that the constitution embodied " the supreme original will of the people in respect to the organization and perpetuation of a state government, and that whatever that supreme original will prescribes, the General Assembly and every officer and citizen to whom the mandate is addressed, must do ; and whatever it prohibits, the General Assembly and every officer and citizen must refrain from doing ; and if either attempt to do that which is prescribed, in any other manner than that prescribed, or to do in any manner that which is prohibited, their action is repugnant to that supreme and paramount law, and is invalid." This is the rule by

which we are to be governed in construing the clauses involved and in determining the constitutionality of the law in question.

Has then the constitution prescribed the authority by which the judge of this police court shall be appointed? for if so the mandate must be strictly obeyed.

It should be borne in mind that no judicial power is vested by the constitution in the General Assembly, either directly or as an incident of the legislative power, and the General Assembly cannot confer it.

Under the charter of Charles II, both the legislative and the judicial power were vested in the General Assembly; but it was one of the objects which the people had in view, in framing and adopting the constitution, to divest the General Assembly of all judicial power. To that end Art. 2 of the constitution provides that "the powers of government shall be divided into three distinct departments, and each of them be confided to a separate magistracy, to wit: those which are legislative to one; those which are executive to another; and those which are judicial to another." For the same reason they used different language in different articles in conferring the powers. In Art. 3 they say that the legislative power of the state shall be vested in the General Assembly. In Art. 5 they say the judicial power of the state shall be vested in the Supreme Court of Errors &c. as hereinbefore cited. Thus, while the entire legislative power is vested in the General Assembly, the judicial power is separated from it and vested in the courts "as a separate magistracy."

It is obvious from this view of these provisions that the General Assembly have no power or authority to organize courts, or appoint judges, by virtue of the general legislative power conferred upon them, and that their authority to do either is special, and derived from Art. 5th of the constitution alone; and that the judicial power is not conferred by the General Assembly, but vests, by force of the constitution, in the courts, when organized pursuant to the special provisions of that article.

It is conceded, as it well may be, that the legislature had

the power to constitute this police court, under the provisions of sec. 1st of the fifth article. There is nowhere in that instrument any limitation in respect to the number or character of the inferior courts which they may establish. It was therefore competent for them to provide for the organization of the court in question, and to define the jurisdiction it should possess ; and when so constituted, the judicial power of the state vested in it, by force of the constitution, to the extent of the jurisdiction so defined.

It must also be conceded that the power to provide a judge of the court in any way the General Assembly should see fit to do, would necessarily be incidental to that power to constitute the court, if no special provision had been made for such appointment.

But such special provision was made, as heretofore recited, as follows : " The judges of the Supreme Court of Errors, of the superior and inferior courts, and all justices of the peace, shall be appointed by the General Assembly, in such manner as shall by law be prescribed."

That provision is mandatory, and there is no possible ground for doubt in relation to its construction, unless it is found in the words " in such manner as shall by law be prescribed."

The term " manner" is a comprehensive one, but it is evident that it has reference, in that connection, to the mode of doing the act prescribed—to the proceedings of the two houses of the General Assembly in making the appointment —whether by ballot or by resolution, and whether by joint or concurrent action of the two houses—and could not have been intended to authorize a delegation of the power to appoint any and all the judges, to any officer or tribunal to whom they might think proper to delegate it. The term " appointed" means " named," or " designated for," or " assigned to," an office. The act of naming, designating or assigning, is necessarily the direct act of the body or person by whom the appointment is made. An appointment therefore, by a common council, pursuant to a law of the General Assembly, is not an appointment by the Assembly, and the construction supposed would render the words, " by the

General Assembly," superfluous. But those words are there, and for a purpose, and if operative are conclusive. And such was the cotemporaneous construction given to the constitution by those who framed and adopted it.

Inasmuch therefore as the judicial power of the state is separated from the legislative and confided to the courts as a separate magistracy, and the power to organize courts and appoint judges is conferred by special mandatory provisions, requiring direct action by the General Assembly, those powers cannot be delegated, and the appointment of judges, in all cases where the constitution has not been altered by amendment, can only be made by vote of the Assembly.

But it is claimed that, however that may be, the appointment of Judge Merrill was not within the purview of Sec. 3, Art. 5 of the constitution, for the reason that the cities existing at the time the constitution was adopted, of which Hartford was one, possessed as a franchise the right to hold city courts and appoint their judges, and that the franchise was continued by the clause of that instrument which continued the rights and franchises of corporations. The claim is supported by a decision made by a deceased and distinguished judge of this court on the circuit, but we do not think it should be sustained.

It is unnecessary to consider the effect of that continuing clause upon then-existing rights and franchises ; or whether, as a mere municipal corporation, the city of Hartford had then or has now, an intangible, *vested right*, as against the legislature, to have a city court with civil jurisdiction and appoint its judge. No rights or franchises were contemplated by that continuing clause except such as were then existing; and it cannot be construed to embrace new and distinct courts or judicial franchises, (if such they may be called) subsequently created. Whatever might have been true therefore, if the criminal jurisdiction conferred upon this police court had been given, as an extension of its jurisdiction, to the then existing city court, a right to have and enjoy this new and distinct judicial tribunal, or the right to appoint its judge, cannot be regarded as within any franchise then possessed by the city. We are constrained by this view to hold

that the law conferred no authority upon the common council to appoint Judge Merrill and that the appointment was void.

But I am entirely satisfied that Merrill was judge *de facto*, and that the proceedings in question were valid. It is claimed that to constitute an officer *de facto*, there must be color of an election or appointment by a body which has actual power to make it. In support of this proposition a dictum of the late Chief Justice Hinman is cited from his opinion in *Douglass* v. *Wickwire*, 19 Conn., 492. I am not satisfied that the dictum was intended to be as broad as it is claimed to be.

The general rule is well expressed by Judge Storrs in *Plymouth* v. *Painter*, 17 Conn., 588, thus :—" An officer *de facto* is one who exercises the duties of an office under color of an appointment or election to that office. He differs on the one hand from the mere usurper of an office who undertakes to act as an officer without any color of right, and on the other hand from an officer *de jure*, who is in all respects legally appointed and qualified to exercise the office. These distinctions are very obvious and have always been recognized."

It is easy to suppose cases where an officer may be appointed by a body who suppose they have a right to appoint him, when in law they have not, and yet the officer will be such *de facto* and his acts cannot be collaterally impeached. Such cases have in fact occurred, and the acts of the officer been sustained. In the state of Massachusetts the legislature passed a law organizing a new county, and authorizing the governor to appoint a deputy sheriff for it. The law was to take effect at a future day. Before it took effect the governor appointed a deputy sheriff for the county and he acted as such. His power to act was questioned collaterally, and it was holden that the appointment was void, because the law had not taken effect, and the authority to appoint had not been conferred, but that the sheriff was nevertheless an officer *de facto*, and the validity of his acts could not be collaterally impeached. *Fowler* v. *Bebee*, 9 Mass., 231.

But it is unnecessary to follow out this view of the subject. This officer undoubtedly had color of appointment from the only body who had constitutional power to appoint him.

He was not an usurper. He had color of appointment by the common council of Hartford, and they had color of delegated authority from the General Assembly. That authority was defective and void, not because the General Assembly had not power to appoint, but because they could not delegate the power. But they did, in fact, authorize the common council to appoint, and by an act which had *all the forms of law*. There was color therefore, derived *from the law*, which emanated from the legislature who had constitutional power to appoint; for that law gave color of appointment to every officer, whether judge or clerk, who was elected or appointed pursuant to its provisions.

It is claimed that there can be no color where the action of the appointing power is void, but there is no foundation for the claim. In the case of *Douglass* v. *Wickwire*, the appointment of the seventh grand juror was without authority and void, but his acts were sustained as those of an officer *de facto*. So in Massachusetts, in the case cited, where the governor appointed a deputy sheriff for a new county before the law constituting the county and authorizing the appointment had taken effect. And there are many other cases of a similar character. Thus, where a minor, who was for that reason ineligible, was appointed to office, it was holden that his appointment was void, but that he must be treated as an officer *de facto*, on the production of his commission. *The People* v. *Dean*, 3 Wendell, 438. So of a commissioner of deeds, who acted under color of a void appointment from the governor who had no authority to appoint. *Parker* v. *Baker*, 8 Paige, 428. So also where a minister of the gospel, who was ineligible by statute, was appointed to office. *McInstry* v. *Tanner*, 9 Johns., 135. So also where a judge was appointed by vote of the legislature, void for want of a constitutional quorum. *Morris* v. *The People*, 3 Denio, 381.

It is very clear from these cases, and upon principle, that it is immaterial whether an appointment is void for the want of legal power to make it; or through irregularity or informality in making it; or is ineffective because of the failure of the appointee to comply with some condition precedent

required of him. It is sufficient, in any case, that the officer have color of appointment from some power having authority, or color of authority, to make it.

Judgment must be advised for the plaintiff.

In this opinion CARPENTER and LOOMIS, Js. concurred. PARK, J., dissented.

PARK, J. I fully concur in the foregoing opinion of the majority of the court except so far as it holds that the acting judge of the police court was a judge *de facto*. I cannot concur with the majority upon this point for the following reasons.

An officer *de facto* is one who has the color of right or title to the office he exercises—one who has the apparent title of an officer *de jure*. This case differs from all the cases that have been cited, where courts have held officers to be *de facto* in character, in this; in all those cases the appointing or electing power had ample authority to make some election or appointment to the office; but here it is not only conceded by the majority of the court, but they in fact hold, that the law purporting to authorize the court of common council of the city of Hartford to elect the judge in question was unconstitutional and void, and consequently conferred no authority to elect any person whatsoever to the office. It will be conceded that if no law had been passed upon the subject, and the court of common council had acted in the premises as they now have, the judge in question could not be regarded otherwise than as an usurper. The question then arises, does this unconstitutional law confer upon the common council color of authority to elect this judge? They must have color of authority to make the appointment, in order to confer upon the appointee color of title to the office. This must be evident, for the common council cannot bestow what they have not to give. They must therefore have color of authority, in order to confer color of title, which is another term for color of authority.

Now, according to the opinion of the majority of the court, the constitution declares, in express and mandatory terms,

that the judge of this court shall be appointed by the legisla-
ture, as much as it does that a judge of the Supreme Court
of Errors shall be so appointed.    This by necessary implica-
tion prohibits an election by any other body.  Hence the case
could not be stronger if the constitution declared in express
terms that the common council of Hartford should have no
power to elect a judge of this court.   How then stands the
case ?   The law and the constitution are directly in conflict.
What the one prohibits, the other declares may be done.   If
they were of equal authority the one would annul the other,
and neither would be capable of conferring *color of authority*.
This is evident, for if one is ˏto be obeyed in preference to
the other, one must have the supremacy, or appear to have ;
hence, if both are equal in authority, and it so appears, both
must be powerless to confer the semblance of authority when
palpably in conflict ; or we have the absurdity of an injunc-
tion to do, and not to do, at the same time.   Suppose the
constitution was silent on the subject, and the law in question
was inconsistent with itself ; that one section authorized the
common council to elect the judge, as it does now, and another
section declared that the legislature only should make the
appointment ; would it be contended that the law gave the
common council color of authority to act in the premises ?
And is the case less strong for the defendant because the con-
stitution, instead of a section of the same act, declares that
the appointment shall be made by the legislature ?

The constitution is supreme over the legislature and all its
enactments.   It makes void whatever the legislature does in
conflict with it.   It declares that the judge of this court shall
be appointed by the legislature.   The legislature declares
that the common council of Hartford shall make the election,
Which has, or appears to have, the supremacy ?   Which con-
fers, or appears to confer, authority ?

A law passed by the legislature cannot have color of author-
ity unless it appears *primâ faciê* to be law ; and it cannot so
appear if it is manifestly repugnant to the constitution.   A
law of doubtful constitutionality may be presumed to be con-
stitutional till judicially decided to be otherwise.   But here

no doubt can be entertained. The majority of the court do not suggest any. The language is plain and explicit. Suppose the legislature should pass a law giving authority to the common council to appoint a judge of the Supreme Court of Errors, is it so that the law would appear *primâ facîê* to be law, or have the semblance of authority, when the higher law declares, in so many words, that it shall be done by the legislature? It seems to me, if anything is too clear for controversy, it is that such a law would be void upon its face, and unable to confer the appearance of authority. If this is not so, if the plain provisions of the constitution can be thus set at naught for the time being, and till the state by its proper officers shall see fit to interfere by a proceeding of *quo warranto*, and till judgment of ouster shall be regularly pronounced through the slow process of the courts, then personal protection from legislative aggression is not so well secured as it is generally supposed to be. The framers of the constitution sought to make the judicial branch of the government independent of the legislative; and to this end they provided for the perpetuity of the Supreme Court of Errors, and of the Superior Court, and prescribed the mode for the appointment of the judges, in order that the legislature might be held in check in cases of emergency, and the constitution be rigidly maintained; but if the judges may be appointed in any other way that the legislature may see fit to adopt, and the judges thus appointed be judges in fact till regularly set aside, the framers of the constitution have been unsuccessful in their efforts. If this may be done, I see no reason why the legislature may not abolish the courts themselves for the time being, and establish others in their places, until the abolishing law shall be judicially determined unconstitutional; for certainly the provision establishing the courts cannot be of more importance or binding authority than the provision organizing the courts when established.

If therefore the courts may be unconstitutionally organized, and still be courts for the administration of justice, as the majority of the court hold, it seems to me they might be unconstitutionally abolished for the time being as easily as

they could be unconstitutionally organized. If the law in the one case would be *primâ faciê* law, and have color of authority, so it must be in the other, and the Supreme Court of Errors would be *primâ faciê* out of existence, and its judges therefore disqualified to decide whether it had existence in fact or not. That question would have to be determined by the unconstitutional court established in its place, if one should be established; for, according to the argument, that would be the only court of last resort *primâ faciê* in existence. To this conclusion we must come, if the majority of the court are right in holding that a law of the legislature is *primâ faciê* law and has color of authority, however repugnant to the constitution it may be.

Again, it is familiar law that if a court has not jurisdiction of the process, or subject matter in controversy, in a particular case, its proceedings are *coram non judice*. This is true in relation to courts lawfully constituted. Why then may not the jurisdiction be contested for a much stronger reason —the manifest unconstitutional organization of the court itself, showing that it has no lawful jurisdiction whatsoever ? In the case of *The People* v. *White*, 24 Wend., 520, one of the questions was whether the aldermen of the city of New York could act as judges of the court of oyer and terminer, inasmuch as they had not been appointed judges of that court in the mode prescribed by the constitution, but were constituted *ex officio* judges of that court by the statute law of the state. Chancellor Walworth, in giving his opinion in the case, says:—" Should the executive or the legislature, either by a public statute or otherwise, assign the duties of judges of the Supreme Court to the several clergymen of the city for the time being, or attempt to authorize them by virtue of their clerical offices to be judges and to hold the Supreme Court in violation of the constitution, such clergymen would not be judges of that court *de facto*, so as to make their judgments valid or binding upon the parties thereto.     *     *     *
If the aldermen as elective officers were constitutionally incompetent to hold a court of oyer and terminer in conjunction with the circuit judge or the first judge of the court of

common pleas, then the law which in terms attempted to confer on them such a power, was unconstitutional and void, and it conferred no power whatever. * * * The constitution is the paramount law to which all courts in the exercise of their judicial powers must bow, notwithstanding any legislative enactments to the contrary. It is not necessary in this case to say that the judgments and proceedings before every tribunal illegally constituted, and in direct violation of a constitutional prohibition, are absolutely void ; so that the judges of the court, and all those who had attempted to execute the process issued by them, would be liable as trespassers. But in deference to the constitution which we have all sworn to support, I must declare as my deliberate opinion, that when the judgment of such a tribunal is properly brought before this court for review, on a writ of error, if the unconstitutional organization of that tribunal fully and distinctly appears upon the record, it is the duty of this court to reverse or annul that judgment." The chancellor did not go farther in the case than he was required to go, but he went far enough to decide that the aldermen were not judges *de facto* of the court of oyer and terminer, notwithstanding the statute law attempted to constitute them judges *de jure*.

Senator Verplanck, in the same case, and upon the same subject, thus remarks :—" I can neither regard it as sound law or wise public policy, any more than as consistent with a republican regard to the rights of private citizens, to hold that the trial of the question of the constitutional or legal power of any officer or judge should depend solely upon the discretion of the attorney general, and remain unquestioned until he impeaches it in the name of the people ; whilst the citizen, upon whom such unlawful authority acts immediately, and may bear hardly, has no means of defending himself, and appealing from this, the greatest of all errors that can occur. If, therefore, in this case the composition of the court be such as would upon information filed by the attorney general be pronounced unconstitutional, I cannot doubt but that the same question may be directly brought up in error

by the prisoner denying the jurisdiction whilst his case is still open and undecided."

The legislature of Kentucky at one time attempted to abolish the court of appeals ordained and established by the constitution of the state, and create a new court in its place. The constitutional court of appeals held in the case of *Hildreth's Heirs* v. *M'Intire's Devisee*, 1 J. J. Marsh., 206, that although the new legislative tribunal "assumed the functions of judges, and clerks, and attempted to act as such, their acts in that character were totally null and void, unless they had been regularly appointed under and according to the constitution."
\* \* \* "They were not the encumbents of *de jure* or *de facto* offices, nor were they *de facto* officers of *de jure* offices. They had no official rights and powers."

This case is in point, and is decisive of this question, if admitted to be law.

Chitty, in his first volume on Criminal Law, page 744, says :—" If a sentence is passed by a person who has no valid commission to judge the parties, it is void, and may be altogether set aside without a writ of error." The same doctrine is held in 3 Inst., 231, Plowd., 390, Bulst., 101, and 4 Bla. Com., 394.

In regard to what constitutes an officer *de facto*, Judge Hinman, in *Douglass* v. *Wickwire*, 19 Conn., 489, says :—" The public and third persons are not required to ascertain the legality of an officer's election or appointment; it is enough if the officer acts under color of an election or an appointment by the only body which has the power to make it."

The majority of the court say that this last remark of the judge is a dictum, and was not intended to be as broad as the language imports. Whether a dictum or otherwise, it is all that the late Chief Justice says in giving the opinion of the court, bearing upon this question there in controversy. And whether a dictum or otherwise, I submit that it is the true doctrine, with perhaps this qualification: it is enough, if the officer acts under color of an election, or an appointment, by the only body which has the power, or *primâ facie* power, to make it.

This rule harmonizes with all the authorities cited by the majority of the court, and by counsel on the trial, and, I submit, is strictly correct. I concede that the public and third persons are not bound to look further than to know that the body making an election or appointment is clothed with *primâ faciê* authority to act in the premises and has so acted. They are not required to look beyond what appears upon the face of the case; but so far the officer and third persons are required to inform themselves in order to justify action under the election or appointment; then, if the election or appointment is defective on account of some collateral matter not apparent on the face of the proceedings, the officer is one *de facto.*

Take the case of *Fowler* v. *Bebee,* 9 Mass., 231, referred to by the majority of the court. The defect in the sheriff's appointment was collateral, and could be ascertained only by investigation. The law gave the governor power to appoint a sheriff, and the defect was, that the appointment was made before the law creating the county took effect. But how could third persons know when the appointment was made? After the law came in force they saw a man exercising the duties of the office of sheriff. They ascertained that the law gave the governer power to appoint a sheriff for the county, and that the appointment had been made. Manifestly, the presumption would be that the power had been duly exercised.

So it may be said of the case of *Douglass* v. *Wickwire,* cited from our own reports. Third persons having an interest in the question were bound to know that towns had authority to elect grand-jurors, and that the one in question had been elected. These facts were sufficient to raise the presumption of a lawful election. They were not required to examine and ascertain whether or not six other grandjurors had been elected, and duly elected, before the one in question. These facts could be known only by investigation. They did not appear upon the face of the case.

So it may be said of all the other cases cited by the majority of the court. The defect in each of them is collateral, and could be ascertained only by examination. Take the

case of *The People* v. *Dean*, 3 Wend., 438, where a minor
was appointed to office; or the case of *M'Instry* v. *Tanner*,
9 Johns., 135, where a minister of the gospel was elected to
an office to which he was ineligible; or the case of *Morris* v.
*The People*, 3 Denio, 381, where a judge was appointed by a
legislature without a quorum. These are plain cases of offi-
cers *de facto*. The defect in each of them consists in the
existence of a collateral fact, which in the first instance
would be presumed not to exist. When the legislature pass
a law, or elect a person to office, the presumption is that a
quorum was present. When an appointment is made, the
presumption is that the appointee is not disqualified by rea-
son of minority; or ineligible by reason of being a minister
of the gospel; or unduly elected by reason of being the
seventh grand juror numerically in the order of election; or
improperly appointed, by reason that the appointment was
made a little sooner than it should have been, as in the case
in the 9th of Massachusetts Reports.

These cases cited by the majority of the court fall far
short, it seems to me, of sustaining the position that a law
of the legislature is *primâ faciê* law, when the supreme law
of the constitution, which all are bound equally to know, is
directly and palpably in conflict with it. The law in question
is confessedly unconstitutional. Can it be presumed consti-
tutional? It must be so presumed in order to be *primâ faciê*
law. It must be *primâ faciê* law in order to confer upon the
common council color of authority. The common council
must have color of authority, or the acting judge of this
court has no color of title.

I think judgment should be advised for the defendant.