INHABITANTS OF BELFAST *vs.* INHABITANTS OF MORRILL.

Waldo, 1874.—March 14, 1876.

*Officer. Overseers of the poor. Pauper.*

The acts of an officer *de facto* are valid as to third parties.

Where the law requires an election to be by joint ballot of two branches, *held*, that an election by the separate action of each branch is sufficient to give at least color of title to the office.

When one of a board of officers is not legally elected, but is an officer *de facto* he may legally join in the action of the board with those who are officers *de jure.*

*Thus*: the mayor and aldermen of Belfast were *ex officio* overseers of the poor; the city clerk who was not the mayor nor an alderman was irregularly elected as an overseer, and chairman of the board, and joined in the action of the board authorizing the supplies to the pauper, and gave the written notices to the defendant town. *Held*, 1, that the city clerk legally joined in the action of the board, and might be counted as one towards constituting a required majority; 2, that his notices to the defendants, and their replies thereto, he having been known and recognized by them as an acting overseer, were legal and binding.

## On exceptions.

Assumpsit, for pauper supplies furnished John Campbell.

By the city charter of Belfast, the powers of selectmen are vested in the mayor and aldermen, so that in case there is no election of overseers of the poor, the mayor and five aldermen are such overseers. The charter also provides that all elections of officers shall be by joint ballot of the two boards in convention.

In the years 1870 and 1871, when the supplies were furnished there was no election of overseers by joint ballot, but by a concurrent vote it was ordered that the mayor and aldermen, and city clerk Quimby, who was neither, be overseers of the poor. Quimby was made chairman of the board, and with three of the aldermen authorized the furnishing of the supplies by one Hayford; the notices to the defendants were signed by Quimby in behalf of the board. At the trial the presiding justice allowed the plaintiffs to prove that Quimby was an acting overseer, and instructed the jury that if Hayford had authority from four acting overseers of the poor, the irregularity of their election would not avail the defendants, and that if the defendants received the notices from Quimby it made no difference to them whether he was regularly or irregularly chosen, if they knew and recognized him as one of the overseers of the city, and replied to the notices received from him.

The verdict was for the plaintiffs, and the defendants alleged exceptions.

*W. H. Fogler*, for the defendants, contended that Quimby was not even an overseer *de facto*, because there was at the time an existing board of overseers *de jure* who were acting as such, and

because the proceedings of the aldermen and common council were not such as to give him color of title to that office; that the answer of the defendants to Quimby's notice was no waiver, the notice not being signed by an overseer; that the supplies were not furnished by a majority of the overseers of Belfast, Quimby being one of the four who authorized the supplies and not an overseer.

*W. H. McLellan,* for the plaintiffs.

LIBBEY, J. The charge of the presiding judge gave to the jury the rule of law applicable to the case correctly. It was sufficient for the plaintiffs to prove that the supplies were furnished to the alleged pauper by a majority of the acting overseers of the poor of Belfast, and that notice was given by one of the acting overseers. *New Portland* v. *Kingfield,* 55 Maine, 172. The evidence introduced by the defendants tended to prove that the election of the mayor and aldermen, and Quimby the city clerk, by the city council as overseers of the poor, of Belfast, for 1870 and 1871, was irregular and in a manner not authorized by the city charter, still they acted as overseers under color of an election by the city council which had power to elect overseers of the poor. They were officers *de facto,* and their acts as such were valid as respects third parties affected thereby. *Brown* v. *Lunt,* 37 Maine, 423. *Cushing* v. *Frankfort,* 57 Maine, 541. *Fowler* v. *Bebee,* 9 Mass., 231. *Bucknam* v. *Ruggles,* 15 Mass., 180. *State* v. *Carroll,* 38 Conn., 449. *Brown* v. *O'Connell,* 36 Conn., 432.

It is contended by the counsel for the defendants that inasmuch as there was no legal election of overseers of the poor by the city council, the mayor and aldermen, having by the city charter the powers of selectmen of Belfast, were overseers of the poor *de jure;* that to bind the defendants the supplies must have been furnished by at least four of the overseers of the plaintiff city; that Quimby though an overseer *de facto* could not act with the overseers *de jure* to constitute a quorum of the board. By the joint order of the city council, under color of which Quimby acted, the board of overseers was made to consist of seven. When one of a board of officers is not legally elected or qualified, but is an officer *de facto* he may legally join in the action of the board, with those who are officers *de jure.* *Scadding* v. *Lorant,* 5 Eng. Law & Eq., 1630.

But it is sufficient for the determination of the case that the mayor and aldermen and Quimby, the city clerk, were acting overseers under color of the election by the concurrent order of the city council. Their action as such is valid as respects the defendants.

The motion to set aside the verdict as against evidence is not pressed by the defendants' counsel. The evidence on the question of settlement is sufficient to authorize the verdict.

*Exceptions and motion overruled.*

APPLETON, C. J., DICKERSON, DANFORTH, VIRGIN and PETERS, JJ., concurred.